CASE 79—PETITION EQUITY—MAY 4.

# Rogers v. Jacob, Mayor, &c.

### APPEAL FROM LOUISVILLE LAW AND EQUITY COURT.

1. TITLE OF ACT OF LEGISLATURE.—An act which regulates the manner in which votes are to be given in certain municipal elections in the city of Louisville, prescribes the duties of officers of elections, and provides penalties for a violation of the act, relates to but one subject, and that subject is sufficiently expressed in the title: "An act to regulate municipal elections in the city of Louisville."

2. LEGISLATURE MAY PROVIDE FOR ELECTION OF OFFICERS OF TOWNS AND CITIES BY BALLOT.—As the constitution gives the legislature the power to prescribe the "manner" in which officers for towns and cities shall be elected, a statute which provides for the election of such officers by secret ballot is not unconstitutional.

3. SAME—ILLITERATE PERSONS ENTITLED TO AID IN CASTING BALLOTS.—A statute which requires votes to be given by ballot must not deprive illiterate persons of such reasonable aid and information as may be necessary to enable them to cast their ballots understandingly, and in so far as it attempts to do so it will be held inoperative.

    A statute requiring each voter to retire to a compartment and there alone and unaided indicate, by a mark on his ballot, the various candidates for numerous offices he wishes to vote for, is held to be inoperative in so far as it deprives persons unable to read or write of such reasonable aid and information as may be necessary to enable them to cast their ballots understandingly.

4. STATUTE VALID IN PART ONLY.—The courts will limit the operation of, or disregard, one or more provisions of a statute that conflict with the constitution rather than allow them to vititate the whole.

CHARLES GIBSON AND H. S. BARKER FOR APPELLANT.

Brief not in record.

BROWN, HUMPHREY & DAVIE FOR APPELLEES.

1. The subject of the act under consideration is sufficiently expressed in its title. (Phillips v. Covington Bridge Co., 2 Met., 211.)

2. The act does not violate that clause of the constitution which declares that all elections shall be free and equal. By preventing bribery, and by enabling the employe to vote his sentiments without fear of conse-

quences, it greatly promotes freedom and equality in elections.  (Commonwealth v. McClelland, 83 Ky., 693.)

3. The constitutional provision that in all elections by the people, or the Senate and House of Representatives, the votes shall be viva voce, refers to elections by that body of electors defined in the constitution as constitutional voters in general elections; and it does not apply to municipal elections which are held not by that constitutional body of electors, but by a different and more limited body of electors.  (Johnson v. De Hart, 9 Bush, 643.)

4. The special provision of the constitution that the legislat      all prescribe the manner of electing town and city officers, must b. read along with the general provision that in all elections by the people the vote shall be viva voce; and so read, the general provision should be held not applicable to municipal elections.  (Buckner v. Gordon, 81 Ky., 666; Johnson v. De Hart, 9 Bush, 643; Standford v. Wingate, 2 Duvall, 440; City of Louisville v. Cully, 9 Bush, 323; Boyd v. Chambers, 78 Ky., 140.)

5. The act in controversy, by making the vote inviolably free and secret, is intended to secure purity in municipal elections; to prevent the corrupt from buying votes, and the weak from being tempted to sell them; and to deprive the powerful employer of the means of coercing the votes of his dependent employes.  It is in the line of advancing political thought in Europe and America; and is constitutionally valid.  (Wigmore on the Australian Ballot System.)

CHIEF-JUSTICE LEWIS DELIVERED THE OPINION OF THE COURT.

Appellant, citizen and owner of real and personal property in the city of Louisville, instituted this action for an injunction to prevent appellees, Mayor and Auditor, issuing certain municipal bonds which the general council, by an ordinance passed October 20, 1888, authorized issued and sold for purposes therein specified, in case of approval by a majority of qualified voters of the city voting at an election that was held November 14, 1888.

As the only cause stated in the petition, or now relied on in argument, for the relief prayed for, is that the election is void for the reason it was held in the manner prescribed by an act of the General Assembly,

entitled "An act to regulate municipal elections in the city of Louisville," approved February 24, 1888, the only question necessary or proper to decide on this appeal is whether that statute is valid.

The first section of it is as follows : "That from and after the passage of this act all elections in the city of Louisville, of municipal officers, members of the general council and school trustees, or to determine any municipal question submitted to the people, shall be held and carried on *by ballot*, in the manner hereinafter provided ; but the provisions of this section shall not apply to the election of judge, clerk or marshal of the city court as long as such officers are voted for at the August election."

The succeeding sections direct the particular mode in which the ballots are to be prepared, cast and counted, prescribe the duties of officers of elections, and provide penalties for violation, or hindrance of due execution of the statute by officers or others.

It is contended the act conflicts with three distinct provisions of the Constitution :

1. Section 37, article 2, is as follows : " No law enacted by the General Assembly shall relate to more than one subject, and that shall be expressed in the title."

The purpose of that section was to prevent passage, through the legislature, of bills under deceptive titles, whereby members at the time, as well as the people, are deceived and misled as to the real nature and object of the laws enacted, and to stop the practice of combining in the same bill two or more diverse subjects, which do not possess singly merit or strength enough to obtain ap-

proval of a majority of either house; but it was not intended thereby to multiply statutes indefinitely and without reason. On the contrary, as said by this court in Phillips v. Covington & Cincinnati Bridge Company, 2 Met., 219 : "None of the provisions of a statute should be regarded as unconstitutional when they all relate, directly or indirectly, to the same subject, have a natural connection, and are not foreign to the subject expressed in the title.'"

It seems to us the manner in which votes are to be given, as provided in section 1 of the statute in question, has a direct relation to, and natural connection with, the general subject of regulating municipal elections expressed in the title, and clearly neither reason nor policy requires excluded from any statute either provisions for the due and proper execution, or those prescribing punishment for a violation of it.

2. Section 15, article 8, as follows : " In all elections by the people, and also by the Senate and House of Representatives, jointly or separately, the votes shall be personally and publicly given *viva voce*, provided dumb persons entitled to suffrage may vote by ballot."

Obviously *the people*, in the meaning of that section, are those only who possess the qualifications of voters required by section 8, article 2 ; and we think the term " elections " was not intended to be confined in its application to political offices or purposes, but, as heretofore held, "is used to designate a selection by the popular voice of a district, county, *town* or *city*, or by some authorized body, in contradistinction to the appointment by some single person or officer." (Speed & Worthing-

ton v. Crawford, 3 Met., 207; Police Commissioners v. City of Louisville, 3 Bush, 597.)

If, then, the validity of the statute before us be determined by section 15, article 8, alone, it must be regarded as unconstitutional, at least to the extent it provides for the election of municipal officers by secret ballot. It, therefore, becomes necessary to consider to what extent, if at all, the operation of that section is limited by section 6, article 6, as follows: "Officers for towns and cities shall be elected for such terms, *and in such manner*, and with such qualifications, as may be prescribed by law." And in that connection the single and decisive inquiry is as to the purpose and meaning of the words, "in such manner," for no question arises in regard to legislative power to prescribe the terms and qualifications of those officers. The phrase, "in such manner," has no relation to the time during which elections are to be held, for the time for holding all elections by the people is fixed by section 16, article 8; and, besides, the language used can not be fairly made to apply to it, nor to the places of holding, for, in the absence of constitutional inhibition, implied power to provide therefor exists. Nor can it be made to apply to holding elections, the general power to regulate which is conferred by section 3, article 2, and section 4, article 8, for the manner of holding elections is entirely distinct from the manner in which votes are to be given, as provided in section 15, article 8, and equally distinguishable from the manner, using language of section 6, article 6, in which officers of towns and cities shall be elected. Holding and conducting elections is appropriately and necessarily the

.act of officers selected for the purpose; but giving or casting votes, or, what are equivalent words, electing or choosing officers, is the act of the people entitled to the privilege of suffrage, which may be done in one or the other of only two modes known or existing in any of the States, viz., *viva voce* and by ballot, both of which are mentioned and recognized in section 15, article 8.

In our opinion, giving the language of section 6, article 6, its natural signification, there is no room for construction, but the conclusion is unavoidable that the framers of the Constitution intended to thereby give legislative power to provide by law for election of officers for towns and cities by secret ballot. And at the first session of the General Assembly after the adoption of the Constitution, held in 1850, the charter of the city of Louisville was adopted, containing this provision : "That all elections held under this charter, whether by the qualified voters of said city or the general council, shall be conducted by secret ballot ;" and such was the manner in which municipal officers continued, without question, to be elected until 1860, so if there was doubt on the subject, the construction adopted by the General Assembly contemporaneously with the adoption of the Constitution, and acquiesced in for such length of time by all departments of the government, would create a strong presumption it was correctly interpreted.

It is a cardinal and indispensable rule, in construing an instrument, to give effect, if possible, to every part of it, and in case of conflict of different portions it is the duty of a court, if it can be done, to harmonize them, and make each part operative rather than any portion nuga-

tory. Adopting that rule of construction, there need be no difficulty in coming to the conclusion, which we have done, that section 6, article 6, was intended, and should be treated, as an exception to, or modification of, the general requirement contained in section 15, article 8.

3. Section 5, article 10, which provides that all elections shall be " free and equal."

A statute requiring votes to be given by ballot need not, any more than the mode of voting *viva voce*, operate unequally, or so as to deprive any person entitled of the privilege of suffrage, and if the one we are considering conflicts with that clause of the Constitution, or denies the privilege of free suffrage, which really exists independent of that section, it is simply on account of defect or vice of some particular provision, not indispensable to the general or successful operation of the law. And the only question about which we have any difficulty is in regard to section 9, that, by requiring each voter to retire to a compartment, and there alone and unaided, indicate by a mark on his ballot the various candidates, for numerous offices, he wishes to vote for, practically operates to deprive those unable to read or write of a free and intelligible choice, and, in fact, makes free suffrage as to them a matter of chance or accident. And thus, while the interests and rights of many may be involved, and should not be denied or jeopardized by nullifying the entire statute already in operation, if it is in other respects valid, we have no right to sanction any law, or part of a. law, that takes from a single human being his constitutional rights. It is, however, permissible, and often important, to limit the operation of, disregard, or strike ·

from a statute one or more provisions that conflict with the Constitution, rather than allow them to vitiate the whole. And, in accordance with, or at least in analogy to, that rule, section 9 must be held inoperative to the extent it, in the manner mentioned, deprives illiterate persons of the opportunity and means of freely and intelligibly voting, for they have the right to avail themselves of whatever reasonable aid and information may be necessary to enable them to cast their ballots understandingly, and can not be legally deprived of it. But as the statute is valid in other respects, the general demurrer to the petition was properly sustained, and judgment dismissing the action is affirmed.