GABRIEL·B. REID, RELATOR, v. WILLIAM J. GORSUCH.

Submitted December 5, 1901—Decided February 24, 1902.

1. The town of Kearny was incorporated in 1899 by acceptance of the general act for the formation, establishment and government of towns (*Pamph. L.* 1895, *p.* 218; *Gen. Stat., p.* 3525), and the supplements thereto, including a supplement (*Pamph. L.* 1898, *p.* 37) which subjects all towns so incorporated to the provisions of the act of 1895 and of "other general laws for the government of towns." Such acceptance was sanctioned by an act of the legislature (*Pamph. L.* 1898, *p.* 150), approved after the supplement of 1898 took effect. Among the "general laws for the government of towns," then in force, was an act (*Pamph. L.* 1897, *p.* 149) providing a term of three years for the town treasurer "elected" in the towns of this state. After the incorporation of Kearny, relator was chosen town treasurer by the affirmative votes of all the members of the town council, to take office June 1st, 1899. *Held,* that relator is entitled to a three-years' term of office.

2. Discussion of the meaning of the terms "appointed" and "elected," as employed in the general act relative to towns (*Pamph. L.* 1895, *p.* 218; *Gen. Stat., p.* 3525), and in the act of 1897 (*Pamph. L., p.* 149).

On information in the nature of *quo warranto.* On demurrer to plea.

Before GUMMERE, CHIEF JUSTICE, and Justices GARRISON, COLLINS and PITNEY.

For the relator, *William Leslie Edwards.*

For the defendant, *Joseph Parker, Jr.*

The opinion of the court was delivered by

PITNEY, J. This is a controversy between rival claimants for the office of town treasurer of the town of Kearny. The town was incorporated by virtue of an act of the legislature approved March 23d, 1898 (*Pamph. L., p.* 150), which, by its terms, was to take effect whenever the inhabitants should accept the provisions of the general act for the formation,

establishment and government of towns, approved March 7th,. 1895 (*Pamph. L., p.* 218; *Gen. Stat., p.* 3525), and the supplements thereto, in the manner therein provided, at any special or charter election held therein, and thereafter the town should be governed under the provisions of the general act and its supplements.    The information alleges that the inhabitants did accept the provisions of said act and the supplements thereto, in the manner therein provided, by a majority of votes cast at a special election held for the purpose January 17th, 1899; that at an annual meeting for organization of the town council held May 1st, 1899, the relator (being duly qualified) was nominated for the office of town treasurer, and, on roll-call of the members of the council, he received for that office nine votes, being the votes of all the members of the council, and was declared the choice of the council for the office in question; that he duly qualified by filing his oath of office and giving the bond as required by law, and having done so entered upon the duties of the office on June 1st, 1899.    The information alleges that he thereby became entitled to hold the office for the term of three years, and thereafter until his successor should be duly elected or appointed and duly qualified; and that, in fact, he continued to discharge his duties until June 14th, 1901, when he was forcibly excluded from his office by the intrusion and usurpation of Gorsuch, the defendant.

The plea does not traverse the facts above alleged, but insists that, under the provisions of the General Town act and its supplements, the term of office of relator as town treasurer was fixed at two years, and until another should be appointed in his stead and qualified as required by the act; and avers that the relator's term of office expired June 1st, 1901, or as soon thereafter as his successor should be appointed and duly qualified; that on May 1st, 1901, the defendant was duly appointed town treasurer and duly qualified on or before June 12th, and was actually inducted into office on June, 14th, 1901, and that thereupon the term of office of relator expired.

It will be seen, therefore, that the sole question for determination is whether relator's term of office was for three years,

from June 1st, 1899, as he claims, or for only two years, from the same date, as the defendant claims.

By the General Town act the term of office of the treasurer is made to extend for two years from the 1st of June following his appointment, and until his successor shall have qualified. But by an act of 1897, hereinafter mentioned, the term of any town treasurer thereafter "elected" is made three years from the commencement of the term. The relator invokes the last-mentioned act, and claims a three years' term. Defendant insists that relator was "appointed," and not "elected" within the fair intendment of the act of 1897, and so was entitled to a tenure of only two years. Upon this narrow inquiry depends the issue of law joined between the parties. Its solution requires a somewhat careful examination of the statute law.

By section 10 of the general act relating to towns (*Gen. Stat.*, p. 3525) it was enacted as follows:

"That the councilmen from each ward and the councilman-at-large, town clerk, town collector, assessor, constables and members of the board of education shall be elected at an annual town election; the town treasurer, town attorney, recorder, commissioners of appeal, overseer of the poor, chief of police, town surveyors, and the commissioners of assessment and poundkeepers shall be appointed by the council in the manner and for the terms hereinafter provided; the chief of the fire department shall be elected in the manner and for the term hereinafter provided by the active members of the fire department; the term of office of any officer elected or appointed, not herein otherwise provided for, may be fixed by the council by ordinance; the council may in like manner appoint such other subordinate officers as may be deemed necessary, and fix their terms of office and compensation and define their duties."

The only provision thereafter contained in the act, with reference to the manner in which the council shall select or designate their appointees, is contained in section 15, which enacts that if at any election there be a failure to fill any one of certain elective offices by reason of two or more persons

having received an equal number of votes therefor, the council shall, by ballot, elect one of the persons so receiving an equal number of votes to fill such office until the next town election. Section 18 provides that in case a vacancy occurs in certain elective offices by reason of death, resignation, &c., the council shall fill such vacancy by the appointment of a suitable person. By section 19, in case any such vacancy shall occur in "any office which is filled by appointment or election by the town council," the council shall fill such vacancy by the appointment of a suitable person. By section 22, the official terms of officers elected under this act shall commence on the 1st day of May next succeeding their election, and the term of any officer who shall be appointed by virtue of this act shall commence on the 1st day of June next succeeding his appointment; and every officer shall hold his office during his official term and until his successor shall have been duly elected or appointed and shall have duly qualified. Section 27 fixes the term of the town clerk at two years. Section 28 provides a similar term for the town collector. Section 29, a similar term for the town treasurer. No term is by this act fixed for the town assessor. By section 83, all general acts heretofore passed relating to incorporated towns are made applicable to any town formed or created under this act, except so far as inconsistent herewith.

By "An act respecting the term of office of the collector of taxes, town assessor and town clerks in towns," approved March 9th, 1896 (*Pamph. L., p.* 55), it is enacted that "the term of office of the collector of taxes, town assessor and town clerk hereafter elected in the towns of this state shall be for the period of three years from the time when said term shall commence, as now provided by law;" and all inconsistent legislation is thereby repealed. And by "An act respecting the term of office of treasurer in towns," approved April 1st, 1897 (*Pamph. L., p.* 149), it is enacted that "the term of office of the town treasurer hereafter elected in the towns of this state shall be for the period of three years from the time when said term shall commence, as now provided by law,"

and all acts and parts of acts inconsistent therewith are thereby repealed.

Again, by an act approved March 1st, 1898 (*Pamph. L., p.* 37), entitled as a supplement to the General Town act of 1895,· it was enacted that "Upon the incorporation of any town by special act of the legislature of this state, such town shall be governed by the provisions of the act to which this is a supplement, together with other general laws for the government of towns, in like manner as if said town had been created and incorporated pursuant to the provisions of the act to which this is a supplement." This act took effect immediately.

It will be observed that all these acts were in force prior to the incorporation of the town of Kearny and prior to the approval of the act which authorized that incorporation. By section 3 of the act of incorporation (*Pamph. L.* 1898, *p.* 152) it was provided that the act should take effect when the inhabitants should accept the provisions of the general act of 1895 and the supplements thereto.

The unchallenged averment of the information is that at the special election of January 17th, 1899, the inhabitants did accept the provisions of the general act and its supplements.

It follows that the relator's term of office was for three· years if he was "elected" as town treasurer, within the meaning of the act of 1897. The argument of the defendant rests upon the insistment that since, by the terms of section 10· of the general act of 1895, the town treasurer was to be "appointed" by the borough council, the relator cannot be considered as having been "elected" to that office, within the meaning of the act of 1897.

We think the argument is not well founded. By reference to the sections already cited from the general act relative to towns it will be perceived that all the officers whose appointment rests with the council (including the treasurer) are to· be selected by a method that may well be described as an election, and, indeed, is so described in the act itself. Therefore, in the framing of that act, the legislature intended to

use the word "appointed" either as synonymous with "elected by the council," or else as meaning a designation to office after a previous election by the council. None of the officers who, by that act, are to be "appointed" to office owes his selection to the act of a single individual; all are selected by the council. And in those sections where a distinction seems to be taken between officers "appointed" and officers "elected," it is for the purpose of indicating that the one class owe their selection to the common council, the other class to the voters of the borough, or to a more limited number of electors (for instance, the members of the fire department); not that there is any essential difference in the method of their selection.

Discriminating authorities sanction the use of the word "appointed" in a sense which includes the notion of election by a body, as well as selection by an individual; and also the use of the word "elected" as applied to those who are chosen by the votes of a body limited in numbers.

By way of authoritative definitions, we have the following:

"*Appointment*—The designation of a person, by the person or persons having authority therefor, to discharge the duties of some office or trust.

"*Election*—Choice; selection. The selection of one person from a specified class to discharge certain duties in a state, corporation, or society." *Bouv. Dict.*

"*Appoint*—To allot, set apart, or designate; nominate or authoritatively assign, as for a use, or to a post or office.

"*Elect*—To pick out; select from among a number. To select for an office or employment by a majority or plurality of votes; choose by ballot or any similar method; as to elect a representative or a senator; to elect a president or mayor." *Cent. Dict.* In this connection an election of an archbishop by the monks of a certain convent is instanced as a proper use of the verb *to elect.*

Under these definitions the distinction seems to be that election signifies the act of choosing, where several participate in the selection. Appointment relates to the bestowal of the office upon the person selected, whether the choosing

be the act of one or of many. Where the choice rests in the sole discretion of an individual, the usual authoritative evidence that a selection has been definitively made is in the act of bestowal; hence, in such cases, the word "appointment" has come to include the function of selection, as well as the function of authoritatively designating the person selected. That the functions are distinct, however, appears when we come to consider those cases where one has the exclusive function of selection, but the appointment is subject to the approval of others; for instance, the governor nominates and, with the advice and consent of the senate, appoints certain officers. But where the power of making an appointment resides in a numerous body, the exercise of the power necessitates a previous agreement, by a majority of voices or otherwise, with respect to the person to be chosen; and the choice so made is an election; after which the person selected receives the appointment, and can properly be said to be "appointed," although he is the choice of many.

Under our system of government the most familiar example of "election" is that which is participated in by the people at large; at the same time it requires the use of the phrase "popular election," or "election by the people," to clearly express the thought.

That these distinctions, and the uses of the terms "elect" and "appoint," are well established in our fundamental and statute laws can readily be demonstrated.

The constitution of the United States provides (article 1, section 2) that the house of representatives shall be composed of members chosen by the people of the several states, and the electors in each state shall have the qualifications requisite for electors of the most numerous branch of the state legislature. No person shall be a representative who shall not, when elected, be an inhabitant of that state in which he shall be chosen. The house of representatives shall choose their speaker and other officers.

Article 1, section 3—The senate of the United States shall be composed of two senators from each state, chosen by the legislature thereof; if vacancies happen during the recess of

the legislature of any state, the executive thereof may make temporary appointments until the next meeting of the legislature; no person shall be a senator who shall not, when elected, be an inhabitant of the state for which he shall be chosen; the senate shall choose their officers.

Article 1, section 4—The times, places and manner of holding elections for senators and representatives shall be prescribed in each state by the legislature, but congress may make or alter such regulations, except as to the place of choosing senators.

Article 1, section 6—No senator or representative shall, during the time for which he was elected, be appointed to any civil office, &c.

Article 2, section 1—The president and vice president shall be elected as follows: Each state shall appoint a number of electors, who shall meet and vote, by ballot, for two persons, &c., and if, on counting the votes from all the states, more than one person have a majority and an equal number of votes, the house of representatives shall choose, by ballot, one of them for president, &c. See, also, on this head, the twelfth amendment.

In the original constitution of this state the words "chosen" and "elected" are used interchangeably, and as equally applicable to those who are selected, whether it be (*a*) by the people of the county at large, (*b*) by those inhabitants possessing a property qualification, (*c*) by the legislative council and assembly in joint meeting, (*d*) by either of these bodies acting separately, or (*e*) by a company of militia. At the same time the judges, &c., who were chosen by the council and assembly in joint session, are said to be thus "appointed," and capable of being "reappointed."

The constitution of 1844 speaks of officers "elective by the people," and "elected by the legal voters." In other places it uses "chosen" and "elected" as synonymous, and as appropriate to be used in order to describe a popular vote; a vote of the joint session of the legislature, or of either the senate or general assembly; a vote by a company of militia, or by the commissioned officers of a regiment, a battalion or a squad-

ron.  In the same instrument the word "appointed" is used as descriptive, not only of those officers who are nominated by the governor and, with the advice and consent of the senate, appointed by him, but also of those who are to be elected by the legislature in joint meeting, such as judges of the court of common pleas, the state treasurer, keeper and inspectors of the state prison.  It is provided that the law reporter shall be "appointed" by the justices of the Supreme Court, or a majority of them.  And, the constitution having provided that in case two or more candidates for governor shall, in the popular election, have an equal number of votes, and the highest number, one of them shall be chosen governor by the vote of a majority of the members of both houses of the legislature in joint meeting.  The schedule (article 10, section 3) provides that "the present governor, chancellor and ordinary or surrogate-general and treasurer shall continue in office until successors elected or appointed under this constitution shall be sworn or affirmed into office under this constitution."

So much for the constitutions.  With respect to our statute law, so far as our scrutiny has extended, the legislature seems, in most instances, to have been discriminating in its use of the terms "elect," "appoint," "election" and "appointment" in the senses above indicated.  And where not discriminating, the term "appointed" is commonly used as applicable to cases where the appointment is the result of an election, as well as to cases where it results from a choice exercised by a single individual.  And on the other hand, "elected" is used as descriptive of those chosen by a limited body, as well as to those chosen by the people.  The citation of a few instances will suffice; any extended quotation would be unduly tedious.  See *Gen. Stat.*, p. 3140, § 3; *Id.*, p. 3142, §§ 8, 10, 12, 13; *Id.*, p. 3143, § 17; *Id.*, p. 3144, § 18; *Id.*, p. 412, § 19; *Id.*, p. 416, § 48; *Id.*, p. 437, § 164; *Id.*, p. 441, §§ 182, 183, 184; *Id.*, p. 443, §§ 194, 196, 197; *Id.*, p. 3617, § 217.  The provisions of the General Town act itself have been already referred to.

It is thus sufficiently demonstrated that the relator, al-

though he received his appointment as the result of a choice participated in only by the members of the council, was a "town treasurer elected," within the meaning of the act of April 1st, 1897, already referred to. *Pamph. L., p.* 149.

This act and the act of 1896 (*Pamph. L., p.* 55), which provided the like term of three years for the collector of taxes, town assessor and town clerk, are *in pari materia,* and should be construed together. They evince a legislative policy to give a uniform term of three years to all those officers who have charge of the fiscal concerns of incorporated towns.

The view we take of the act of 1897 renders baseless the objection made to it by the defendant on constitutional grounds. If the act did, in fact, discriminate between towns in which treasurers are elected and those in which they are appointed, it would be difficult to discover a rational ground for such discrimination.

We find it unnecessary to pass any opinion upon the supplement to the act of 1897, approved March 23d, 1899. *Pamph. L., p.* 245.

The relator is entitled to judgment upon the demurrer.