L. W. SCHAFFNER, Appellee, v. FRANK S. SHAW, Auditor of State, Appellant.

OFFICERS: Noncreation of Office. A legislative act which provides
1    for an additional district court judge does not *create* an *office.*

OFFICERS: Existence of Vacancy. A vacancy in office occurs instanter
2    upon the passage and approval of a legislative act which authorizes the governor to appoint an additional district judge in a named district.

CONSTITUTIONAL LAW: Increase of Salary of Judges—Appoin-
3    tees. The constitutional prohibition that the salary of judges of the district court shall not be increased ''during the term for which they shall have been *elected,''* applies to judges *appointed* by the governor to fill vacancies, as well as to those elected by the people. (Const., Art. 5, Sec. 9.)

CONSTITUTIONAL LAW: Increase of Salary of District Judge. The
4    constitutional prohibition that the salary of a judge of the district court shall not be increased ''during the term for which he shall have been elected,'' is not violated by a salary-increasing act *passed* by the assembly and *approved* by the governor *prior* to the

passage, approval, and publication of the act under which the judge is appointed, even though the salary-increasing act did not become effective until a later date,—July 4th, following.

**STATUTES:** "Law" With Effectiveness Postponed. A legislative act becomes a *law* instanter upon its due passage and approval by the governor notwithstanding the fact that the date when it becomes *effective* is postponed.

*Appeal from Polk District Court.*—LESTER L. THOMPSON, Judge.

DECEMBER 31, 1920.

REHEARING DENIED JUNE 25, 1921.

ACTION to mandamus the auditor of state to issue warrants for an alleged unpaid balance owed to two district judges as salaries. Claims for these differences were duly assigned to plaintiff. Decree was entered, as prayed. The auditor of state appeals.—*Affirmed.*

*Clarke & Cosson,* for appellant.

*Healy & Faville,* for appellee.

LADD, J.—The thirty-seventh general assembly enacted an amendment to Section 253 of the Supplemental Supplement to the Code, 1915, increasing the annual salary of district judges from $3,500 to $4,000. See Chapter 235, Acts of the Thirty-seventh General Assembly. This enactment, approved by the governor on April 12, 1917, was without publication clause. By Chapters 255 and 256 of the Acts of the Thirty-seventh General Assembly, the number of judges in the eleventh and fourteenth judicial districts was increased, one judge in each district, and the governor was authorized to fill by appointment the vacancies so created. These acts were approved by the governor on April 17, 1917, and went into effect on their publication, April 19th of the same year. The governor appointed James DeLand as district judge in the fourteenth judicial district, and G. D. Thompson as district judge in the eleventh judicial district, and

both qualified, about May 1, 1917, for terms expiring January 1, 1919, or until successors should be elected and qualified. The auditor of state issued warrants on the treasurer of state for their salaries at the rate of $3,500 per annum until January 1, 1919, notwithstanding their demand that warrants be issued to them at the rate of $4,000 per annum from July 4, 1917, when the amendment increasing the salary of district judges took effect.

Section 26 of Article 3 of the Constitution declares that:

"No law of the general assembly, passed at a regular session, of a public nature, shall take effect until the fourth day of July next, after the passage thereof. Laws passed at a special session shall take effect ninety days after the adjournment of the general assembly by which they were passed. If the general assembly shall deem any law of immediate importance, they may provide that the same shall take effect by publication in newspapers in the state."

Section 9 of Article 5 of the Constitution provides that judges of the supreme and district courts "shall severally receive such compensation as the general assembly may, by law, prescribe; which compensation shall not be increased or diminished during the term for which they shall have been elected."

The auditor's contention is that, though the judges were appointed and qualified subsequent to the passage and approval of the amendment increasing district judges' salaries, that amendment, being without publication clause, did not become effective until long afterwards, to wit, July 4, 1917, and that, therefore, such increase could not become operative during the respective terms of office extending to January 1, 1919. On the other hand, counsel for plaintiff urges: (1) That the office created by this special act of the legislature was distinctively an appointive office, and the judges were not elected, but were appointed, and that the Constitution applies to elected officers only; and (2) that the amendment increasing the salary became a law before the office was created or the judges appointed, and that, therefore, there was no legislative increase in salary during their respective terms of office.

I.  Chapter 255 of the Acts of the Thirty-seventh General Assembly merely amended Section 227 of the Supplemental Supplement to the Code, 1915, by striking out "two" as the num-

ber of judges in the fourteenth judicial district
and inserting "three" instead, authorizing the
governor to fill the vacancy so created, and pro-
viding that the person so appointed should hold office until Janu-
ary 1, 1919, or until his successor should be elected and qualified.
The same is true of Chapter 256 of the Acts of the Thirty-seventh
General Assembly, save that the word "four" was substituted
for "three" in the paragraph of said Section 227 relating to the
eleventh judicial district. Neither purported to create another
court, but assumed that, in the generic sense, the district court
existed as created by Section 1 of Article 5 of the Constitution.
The judges are but organs of the court, the conduits through
which it speaks. The court and judge are by no means a unit.
They coexist, but not all in the same person. *Magruder v.
Swann*, 25 Md. 173. For the transaction of business, that court
"consists of a single judge, who shall be elected by the qualified
electors of the district in which he resides." Constitution, Sec-
tion 5, Article 5. The amendments increasing the number of
judges were authorized by an amendment to Section 10 of Ar-
ticle 5 of the Constitution, providing that:

"At any regular session of the general assembly, the state
may be divided into the necessary judicial districts for district
court purposes, or said districts may be reorganized and the num-
ber of the districts and the judges of said courts increased or
diminished; but no reorganization of districts or diminution of
judges shall have the effect of removing a judge from office."

The increase or diminution of the number of judges contem-
plated by Section 10 of Article 5, as so amended, is of the dis-
tricts and judges, but not of the court. The court existed from
its creation by the Constitution. Its functions are exercised
through a single judge, and the addition of a judge in a district
does not change the court, but amounts to no more than adding
another to the numerous offices of district judge. The acts, then,
did not create a distinctively new office, but added to the number
of the offices previously existing. See *State v. Emmons*, 72 Iowa
265.

II. The effect of increasing the number of judges in each
of these districts created a vacancy in the office of district judge
in each. The word "vacancy," as applied to an office, has no

1. OFFICERS: non-
creation of
office.

2. OFFICERS: exist-  technical meaning. "Vacant" means empty,
ence of vacancy. unoccupied. As applied to an office, it means
"without an incumbent." Thus an existing office without an incumbent is vacant; and by the great weight of authority there is no difference, in so far as the right to appoint is concerned, whether the vacancy is occasioned by death or resignation of the incumbent, or the office has been created, and no incumbent has been appointed or elected to the office. Any office without an incumbent is deemed to be vacant. As said in *State v. Mayor of Butte,* 41 Mont. 377 (109 Pac. 710):

"The office, having been newly created, became *ipso facto* vacant in its creation."

See *In re Fourth Jud. Dist.,* 4 Wyo. 133 (32 Pac. 850); *State v. Askew,* 48 Ark. 82 (2 S. W. 349). As declared in *Stocking v. State,* 7 Ind. 326:

"An existing office without an incumbent is vacant, whether it be a new or an old one."

Many courts, as said in *Knight v. Trigg,* 16 Idaho 256 (100 Pac. 1060), hold that:

"The word 'vacancy' as aptly and fitly applies to and de-scribes the condition of a newly created office, and before it is filled with an incumbent, as it does to an office that has been occupied by a duly elected officer who subsequently died or re signed."

The Supreme Court of New York remarked, in *In re Application of Collins,* 16 Misc. Rep. 598 (40 N. Y. Supp. 517), that:

"A newly created office which is not filled by the tribunal which created it becomes vacant on the instant of its creation."

See, also, *Yates v. McDonald,* 123 Ky. 596 (96 S. W. 865); *State v. Burkhead,* 187 Mo. 14 (85 S. W. 901); *Commonwealth v. McAfee,* 232 Pa. 36 (81 Atl. 85); and cases collected in 8 Words and Phrases, beginning at page 7259. The governor, having authority so to do, appointed De Land and Thompson to fill the vacancies created; and, upon qualification, they exercised the same functions as other like officers. We discover no ground for discrimination between these and other district judges, elected or appointed.

III. The judges were appointed for a period extending

from May 1, 1917, until January 1, 1919, when the regular term of four years began, and until their successors should be elected and qualified. Such period was not the filling out of an unexpired term, and for this reason they could not be within the rule of decisions declaring the term a unit, and holding that, where the incumbent resigns or dies, the appointee for the remainder of the term comes within the prohibition of any increase or diminution of salary. On this question, the cases are in conflict. *State v. Frear,* 138 Wis. 536 (120 N. E. 216); *Gaines v. Horrigan,* 4 Tenn. 608; *State v. Porter,* (Mont.) 188 Pac. 375. The vacancy, as seen, was created by statute, and an incumbent designated for the particular office for the first time. This was by appointment, and not by election, unless the words "appoint" and "elect" are to be treated as synonyms. That they are not ordinarily so regarded is conceded by all the authorities. Webster defines "appoint" as meaning "to assign, designate, or set apart, by authority;" and "elect" as meaning "to determine by choice, to decide upon, to choose, to select, or take for an office by vote, to designate." The Century Dictionary defines "appoint" as meaning "to allot, set apart, or designate; to nominate or authoratively assign; to settle, fix, name, or determine by authority or upon agreement," and "elect," as meaning "to pick out; select from among a number; to choose; prefer; determine in favor of." Both words involve the choice or selection of some person or persons thought suitable for the office or place, and the distinction uniformly pointed out in the books is that "election" ordinarily has reference to the choice or selection by the electors of nation, state, or some of the almost numberless subdivisions; while "appointment" is the expression of choice or selection, but by an individual, as by governor, or by several constituting an official body, as a town or city council. The two words are not always employed with discrimination; but, as appears in the decisions to be cited, have sometimes been made use of interchangeably. The word "election," as found in the Constitution of this state, is qualified by defining, in every instance save that under consideration, where used, unless what is intended is apparent. Thus, in Section 6 of Article 2 of the Constitution, it is said that "all elections by the people shall be by ballot." Sec-

*Note in margin:* 3. CONSTITUTIONAL LAW: increase of salary of judges: appointees.

tion 7 of Article 3 makes each house judge of the election of its own members. Section 21 of Article 3 declares that:

"No senator or representative shall, during the time for which he shall have been elected, be appointed to any civil office of profit under this state, which shall have been created, or the emoluments of which shall have been increased during such term, except such offices as may be filled by elections by the people."

Section 38 of Article 3 declares that:

"In all elections by the general assembly, the members thereof shall vote *viva voce.*"

Section 2 of Article 4 provides that:

"The governor shall be elected by the qualified electors."

Section 10 thereof provides that:

"When any office shall, from any cause, become vacant, and no mode is provided by the Constitution and laws for filling such vacancy, the governor shall have power to fill such vacancy, by granting a commission, which shall expire at the end of the next session of the general assembly, or at the next election by the people."

Section 3 of Article 5 of the Constitution declares that "the judges of the Supreme Court shall be elected by the qualified electors of the state;" and Section 5 thereof, that the judge of the district court "shall be elected by the qualified electors of the district in which he resides."

Section 6 of Article 11 provides that:

"In all cases of elections to fill vacancies in office occurring before the expiration of a full term, the person so elected shall hold for the residue of the unexpired term; and all persons appointed to fill vacancies in office, shall hold until the next general election, and until their successors are elected and qualified."

In so defining "election," where what is meant thereby is not apparent, there is an implication of its possible use in a different sense. Certainly, the imagination is not vivid enough to suggest any reason for shielding a judge elected by the people from the influence of the legislative department of government by prohibiting the increase or diminution of his salary during his term of office which is not equally applicable to a judge appointed by the governor to fill a vacancy and serve an unexpired

term. Though the Constitution recognizes the necessity of fill-
ing vacancies in elective offices, no discrimination between in-
cumbents is to be found therein, save in the terms of service; and
for this court to construe the clause prohibiting the general as-
sembly from increasing or diminishing the compensation of a
judge, Supreme or district, "during the term for which they
shall have been elected," as not including judges appointed,
would be ignoring the purpose and spirit of the fundamental
law. As well say that Section 9 of Article 5, in providing that.
"they shall severally receive such compensation as the general
assembly may by law prescribe," has reference to judges only
who have been elected by the people. The context, as we think,
leaves no doubt as to what was intended by the last clause of
Section 9 of Article 5, under consideration:

"Shall severally receive such compensation as the general
assembly may, by law, prescribe; which compensation shall not
be increased or diminished during the term for which they shall
have been elected."

It is to be noted that the salary of each judge of each court
is fixed until 1860. This includes the judges appointed, as well
as those elected; for authority to compensate the former is not
to be found elsewhere, and the language employed is exclusive.
After that time, they (that is, those previously mentioned) are
to receive such compensation as the general assembly shall pre-
scribe. Such compensation, that is prescribed for judges ap-
pointed, as well as for those elected, shall not be increased or
diminished.

So far, there is no escape from the conclusion that the sub-
ject-matter is concerning Supreme and district judges, regard-
less of the manner of having attained such office. The section,
in fixing salaries and authorizing the general assembly so to do,
has reference to all judges of Supreme and district court, re-
gardless of whether elected or appointed; and it is the compen-
sation thus prescribed, for those appointed as well as elected,
which may not be changed. There is no escape from this con-
clusion, and the only doubt is as to the period during which
such change is prohibited. The pronoun "they" in the last
clause relates back to the judges theretofore mentioned, i. e.,
those holding under appointment, as well as election, and by

"the term" for which elected must have been meant that during which they were selected or chosen to serve. We are not saying that the words "appointment" and "election" are synonymous. What we do say is that, in the light of the context and the purpose sought to be effectuated, the word "elected," as employed in the clause "during the term for which they shall have been elected," is broad enough to include any who hold the office by appointment. As remarked in *State v. Harrison,* 113 Ind. 233 (3 Am. St. 663), after alluding to the contention that the words "elect" and "appoint" are not legally synonymous:

"As a general proposition, and for the purposes of this case, this may be conceded; but the question is not what is the best primary definition of the terms 'elect' and 'appoint,' or whether or not they are legally the equivalent of each other. It is rather to ascertain the sense in which the term 'elected' was employed by the framers of the Constitution in the above section."

See, also, *State v. Compson,* 34 Ore. 25 (54 Pac. 349), and *Reid v. Gorsuch,* 67 N. J. L. 396 (51 Atl. 457), for interesting discussion of the use of and distinction between the words "elect" and "appoint." In *Odell v. Rihn,* 19 Cal. App. 713 (127 Pac. 802), action by a board of supervisors was involved, and the court observed that:

"The words 'elected' and 'appointed' ordinarily are not synonymous. In its limited sense, the word 'elected' is usually employed to denote the selection of a public officer by the qualified voters of a community. On the other hand, the word 'appointed' is generally understood to mean the selection of a public officer by one person who is empowered by law to make the appointment. In its broadest sense, however, the word, 'elected' means merely 'selected.' When used in that sense, the word 'elected' is synonymous with the word 'appointed;' and where, as in the case at bar, a public officer has been selected by the votes of several members of a city council, it may be truly said, in the broadest sense of the term, that he was elected."

Other decisions might be cited; but enough has been said to indicate the distinction drawn. The words seem to have been employed interchangeably in some Constitutions, as in that of New Jersey, and "chosen" is to be found in that of the United

States, as equivalent to appoint or elect. *Reid v. Gorsuch*, supra; *Magruder v. Swann*, 25 Md. 173, 214; *State v. Torreyson*, 21 Nev. 517 (34 Pac. 870). In several Kentucky cases, the courts held that one of these words may not be accorded the meaning of the other. See *Rogers v. Jacob*, 88 Ky. 502 (11 S. W. 513); *Speed & Worthington v. Crawford*, 60 Ky. 207; *State v. Squire*, 39 Oh. St. 197. So much depends on the context that little or no aid is to be derived from a review of decisions in other states. We are content in construing the section of the Constitution in question as prohibiting the general assembly from increasing or diminishing the salaries of Supreme or district judges during their terms, whether elected or appointed thereto.

IV. As indicated, the manifest object of this last clause of the section quoted is to shield the judges from influence which otherwise might emanate from the other departments of government, and its meaning is not that the salary must be the same throughout the term, but that the general assembly may not, during such term, change the compensation or salary to be paid monthly or annually after a specified future date; and every district judge subsequently elected would be entitled thereto, even though this may have effected an increase at the middle of the term being served. Thus, some of the district judges will be elected in 1922, and others in 1924. Should the general assembly enact a law providing that salaries of all district judges be $6,000, an increase of $2,000, from and after January 1, 1924, this would not be during the term of any of said judges, but would effect an increase of compensation at the middle of the terms of those elected in 1922; and all would receive the increased salary at the same time, thereby equalizing the salaries of such officers from the date fixed. The prohibition is interposed against action by the general assembly, for it only may fix or increase compensation; and this clause merely denies it the power, during a term of a district judge, to increase or diminish his compensation for services rendered or to be rendered in that period.

4. CONSTITUTIONAL LAW: increase of salary of district judge.

As seen, Chapters 255 and 256 of the Acts of the Thirty-seventh General Assembly were passed, approved, and published, as well as the appointment of the judges made, subsequent to

5. STATUTES: "law" with effectiveness postponed.

the passage and approval by the governor of the amendment increasing the salaries of district judges. Though without a publication clause, that amendment then became law, though it did not become effective until the 4th of July following. It was not enacted during the term of office of either of these appointees, and the only remaining question is whether the amendment became a law when approved by the governor, or was it tentative merely, to be ripened into law only upon the lapse of time? Section 16 of Article 3 of the Constitution reads:

"Every bill which shall have passed the general assembly, shall, before it becomes a law, be presented to the governor. If he approve, he shall sign it; but if not, he shall return it, with his objections, to the house in which it originated, which shall enter the same upon their journal, and proceed to reconsider it; if, after such reconsideration, it again pass both houses, by yeas and nays, by a majority of two thirds of the members of each house, it shall become a law, notwithstanding the governor's objections. If any bill shall not be returned within three days after it shall have been presented to him, (Sunday excepted), the same bill shall be a law in like manner as if he had signed it, unless the general assembly, by adjournment, prevent such return. Any bill submitted to the governor for his approval during the last three days of a session of the general assembly, shall be deposited by him in the office of the secretary of state within thirty days after the adjournment, with his approval, if approved by him, and with his objections, if he disapproves thereof."

The bill enacting this amendment was presented to and approved by the governor, who signed it; and therefore it became a law, under the clear implication of the first sentence of the section quoted. This construction is confirmed by the language of Section 26 of the same article:

"No law of the general assembly, passed at a regular session, of a public nature, shall take effect until the fourth of July next, after the passage thereof."

The bill, then, became a law upon its approval by the governor; or, in the absence of such approval as prescribed by the Constitution, the taking effect only was postponed. It follows,

then, that the increased compensation provided by the amendment (Chapter 235 of the Acts of the Thirty-seventh General Assembly) became a law before, and not during, the terms of Judges DeLand and Thompson, and they were entitled to the compensation authorized thereby, from the time the law took effect.

The authorities are in accord with what we have said. In *People v. Inglis,* 161 Ill. 256 (43 N. E. 1103), the court, after referring to provisions of the Constitution of that state, similar to ours, concluded that:

"Under this clause of the Constitution, an act of the legislature becomes a law immediately upon receiving the approval of the governor. It does not go into effect until the first day of July after its passage, but it is, nevertheless, a law after it receives the approval of the governor. The existence of a law and the time when it shall take effect are two separate and distinct things. The law exists from the date of approval, but its operation is postponed to a future day."

See *Stuhr v. Mayor of Hoboken,* 47 N. J. L. 147; *Dunbar v. Cronin,* 18 Ariz. 583 (164 Pac. 447).

The ruling of the district court in awarding the writ of mandamus has our approval, and its decree is—*Affirmed.*

WEAVER, C. J., STEVENS and ARTHUR, JJ., concur.