STATE OF MISSOURI *ex rel.* A. JACKSON, Appellant, *v.* JOHN W. EMERSON, Respondent.

*Constitution—Judiciary.*—The amendment to the Constitution ratified by the General Assembly at the Session of 1850–51, was intended to produce uniformity in the tenure of the judges throughout the State. The power to create new circuits was given to the Legislature, and it had authority to provide when creating a new circuit, that the judge elected in that circuit should hold his office until the next general election for judges, although it should be for a less term than six years.

*Appeal from St. Louis Circuit Court.*

*E. B. Ewing,* for appellant.

The act of 1855 (Sess. Acts 1855, p. 24) is valid except so far as it undertakes to limit the tenure of the office of judge. This clause is merely a void provision engrafted upon a valid act. There being no express limitation upon the power of the Legislature in the creation of judicial circuits and the fixing the time for holding elections therein, the act of 1855 is valid in these particulars unless the exercise of this power is clearly repugnant to or inconsistent with some provision of the Constitution.

The petitioner was duly elected in 1857, and, if duly elected, it was for the full term of six years, commencing from the expiration of the first term in 1861.

As soon as a judge is elected, he is in office under the Constitution, which prescribes the tenure of his office; and under its guaranties he could not be disturbed even by an act of legislative authority. There was a definite purpose in view, of course, in fixing the tenure of the office at that period. The considerations that influenced the authors of this provision in prescribing that period as the duration of the office apply, of course, with the same force to judges of circuits created after the constitutional amendment was adopted. As to the then existing ones, it is impossible to make a distinction between them.

The Constitution nowhere provides, either expressly or by

implication, that all the judges of Circuit Courts shall be elected at the same time; and to give such a construction to this clause providing for the first general election in August, 1851, and on the first Monday in August every six years thereafter, is to qualify other provisions improperly, and to restrict the power of the Legislature within narrower limits than their terms import and the object in view would warrant. Taking the several provisions on this subject together; the only reasonable construction is that as to the circuit judges then in office, only, the clause providing for a general election should apply; and that the Legislature, under the ample power elsewhere given (there being no limit as to the number of judges), might, when the public good required, create new circuits and provide for the election of judges therein.

It is very remarkable if it had been intended that the judges to be elected in the circuits thereafter established should be chosen at the same time with those then in office, that it was not so declared in a distinct clause, or as a proviso to that fixing the time of the general election.

There is nothing in the mere fact that the election of the petitioner in 1857 was held some three years or more before the expiration of his first term, under the election in 1855. Elections for all offices filled in that method after the first one, are held before there is an actual vacancy or expiration of the term of office, and are thus held to prevent a vacancy. Our laws, it is true, generally provide for such an election shortly before the expiration of the prescribed official term; but whether one month or one year intervenes does not affect the question of legislative power or authority, but is a question of expediency. Members of Congress formerly were elected more than a year before their actual qualification as members. The practical construction by the legislative department of the provision in question fully accords with the foregoing views (R. C. 1855, p. 552, § 42); as also their construction of a similar provision (id. p. 91, § 3, and § 5, p. 335).

The theory of a vacancy is much relied on by respondent. This is attempted te be maintained by assuming that the act of 1855, creating the circuit, created at the same time a vacancy ; and that the tenure of the incumbent appointed or elected to fill it was for " the residue of the term only." What is meant by a *vacancy*, as this term is used in the Constitution, is too clear for argument. It is a vacancy happening by death, resignation, removal out of his circuit, or by any other disqualification. If it happen from any of these causes, and there can be no others, at least six months before the general election the Governor must issue his writ of election to fill it ; but if within that period, the Governor appoints ; and in either case the election or appointment shall be for the residue of the term only.

The act of March 3, 1855, creating the 15th circuit and providing for an election was approved March 3, 1855. At a subsequent period of the revising session, December 12, 1855, the act establishing judicial circuits, &c., was approved, in which that part of the special act of 3d March, creating the circuit, was incorporated—R. C. 1855, p. 546, § 16. And on 8th December, 1855, the " Act to establish courts of record" was approved, in which (§ 4, p. 532) it is provided that " there shall be an election held in *each* judicial circuit in this State for the election of a circuit judge, &c., on the first Monday in August." Thus it is seen that the provisions of these general laws are made expressly applicable to the 15th circuit as well as to all others.

The election of the appellant in 1857 was valid and regular ; that is, it was held pursuant to law. The act of 3d March; creating the circuit and providing for an election, was also valid in these particulars ; so were, undoubtedly, the provisions of the general laws referred to, requiring an election in that circuit in 1857. If, then, these several acts were a valid exercise of legislative authority, the appellant was rightfully in office by virtue thereof and the election held under them; and if rightfully in office, it was for the full constitutional term of six years, under each election ;

unless the Legislature, in creating a new circuit, may limit the tenure at discretion, which we have seen it cannot do.

In construing the provisions of the 'Constitution, and the laws referred to, effect will be given to all so far as they can stand together; but if entire effect cannot be given to them, the laws must yield in so far as they are repugnant to the constitutional provision. The only repugnancy is in that part of the act, creating the circuit, which attempts to abridge the term of office. The balance of the act, and of the other acts referred to, are consistent therewith and must have effect. It is no answer to this to say that the election of the appellant, according to this view, would be held (for his second term) in 1857, sometime before his first term expired, and therefore he could hold by virtue of the first election only two years. Certainly no such argument can prevail against the positive provision of the Constitution fixing the tenure of the office—Acts 1855, p. 94, 532, 535, 546, 552 ; id. 91, 335 ; People ex rel. Ingersoll v. Gray, 6 Cow. 646 ; Bruce v. Fox, 1 Dana, 453 ; Banton v. Wilson, 4 Tex. 410 ; Shelby v. Johnson, 1 Dallam (Tex.)

*Glover & Shepley*, for respondent.

I. Article VII. of amendments to the State Constitution clearly settles the law against plaintiff.

Under his election in March, 1855, plaintiff could only fill the balance of the unexpired constitutional term yet remaining between 1851 and 1857. While the Constitution fixes the length of the term at six years, it as clearly defines and provides that those six years shall commence on a certain day and end on a certain day, and that the six years must exist between those fixed periods.

If a judge be elected at any other time than that fixed by the Constitution, it is not, it cannot be, for a regular term ; it can only be for the remaining time between such election and the period fixed for the next regular election.

The election in March, 1855, at which the plaintiff was first elected, was not held at the time fixed in the Constitu-

tion for holding regular elections for regular terms. It was for a special purpose, at a time when there was no other election in the State. To claim that such was a regular or general election, entitling the holder under it to serve six years without regard to time of commencement or ending, is an outrage upon common sense.

That article of the Constitution, properly construed, does not contemplate that the term shall be for six years beginning at any uncertain or undefined time, but it does mean that the term is immovable, and unchangeable as to the date of commencement and termination, and that between these two periods the full term of six years exists; in other words, commencing on the first Monday in August, 1851, and ending first Monday in August, 1857, and every six years thereafter.

The Constitution clearly contemplates that each judge in each circuit in the State shall not only be elected at the same uniform time, but that they shall enter upon the discharge of their duties and vacate and relinquish their offices at the same fixed time.

The different provisions of the article in question, logically adjusted, would be as follows:—" The offices of the several circuit judges in this State shall be vacated on the first Monday in August, A. D. 1851, and every six years thereafter"; "and an election shall be held on the said first Monday in August, 1851, and every six years thereafter, in each circuit within the State, for a judge thereof, who shall hold his office for the said space of six years, to-wit, until the next regular election for judges as hereinbefore provided for."

II. But there are other clauses of the same article of the Constitution which make this view of the law conclusive.

It is provided that when a vacancy occurs less than six months before a regular election for judges, the Governor may appoint; but where it occurs more than six months, then the Governor shall issue a writ of election to fill such vacancy, "but every such election or appointment to fill a vacancy shall be for the residue of the term only."

What, then, is a vacancy ? We hold as an inevitable logical conclusion, that whenever and wherever there is an office existing or created, and that office is unfilled by an officer, there exists a vacancy. The very moment the Governor approved the act on the 3d day of March, 1855, creating the 15th judicial circuit, that very moment there existed a vacancy in the office of judge of that circuit. Such vacancy is recognized in the very act creating the circuit, by providing for the election of judge on the third Monday in March, 1855. "Every such election to fill a vacancy"—that is, to fill any vacancy, arising from any cause—" shall be for the residue of the term only."

If, then, the office remaining unfilled for two years, or nine years, created a vacancy in contemplation of this article of the Constitution, so there must have been a vacancy in that office from the very day it was created until filled by the subsequent election of Judge Jackson. If this reasoning be correct, then "every such election * * * shall be for the residue of the term only," which ended on the first Monday in August, 1857, the date of plaintiff's second election.

On the latter day he was again elected, and this time at the regular election, at the regular constitutional time, and for a regular constitutional term of six years, commencing on that day, and ending same day in August, 1863, changed by the Convention to November, 1863. When defendant was elected November 3, 1863, plaintiff's official term ended.

The Constitution does not, nor never did, contemplate that judges should serve for six years from some uncertain and undefined time, depending upon when the Legislature created the circuit. This would at once destroy that uniformity and harmony which the framers of the Constitution were most solicitous about securing. It would present in this case the singular anomaly of compelling one judge to be elected at a certain fixed time, without compelling or requiring his predecessor to vacate the office to which he was elected.

III. Again, for illustration, suppose the circuit had been created less than six months before the general election on

the first Monday in August, 1857, and the Governor had appointed a judge according to the Constitution, it will certainly not be pretended that such appointee could hold beyond the date of his successor's election at the first general election. How is it, then, that because plaintiff was elected, and not appointed, he must serve six years? The fixing the term for the special election in 1855, by the Legislature, in the act creating the circuit, simply stands in lieu of the Governor's writ of election.

IV. If for argument it be granted that the doctrine of the plaintiff be correct, that he had the right to serve six years under his election in March, 1855, we hold and maintain that by submitting to an election in 1857, filing his new oath of office, and qualifying under such new election, he waived and relinquished all the additional rights he acquired under his first election in 1855; in other words, that all the time he claims under his first election after the date of his second election in August, 1857, became merged into such regular term under the last election; that at his last election in August, 1857, he was elected for six years, not from March, 1861, as he claims, but from the day of the election, and until his successor should be elected and qualified.

V. It is further suggested that if it be held that in 1855 plaintiff was elected for a regular term, then we answer that such election was not held at the right time, and for that purpose it was a nullity.

The Constitution says the election for the regular terms "shall be held on the first Monday in August in 1851, and every six years thereafter." This election was not held at the time fixed for the regular term elections; hence when it is argued that plaintiff was elected in March, 1855, for a regular term, the argument results in proving that such election, for that purpose, was a nullity, for that it was not held at the constitutional time. If, therefore, the election in 1855 was not to fill a vacancy or the unexpired time until August, 1857, it was a farce, and had no validity under the Constitution, and plaintiff was an intruder.

VI. "The first Monday in August, 1851, and every six years thereafter," is fixed by the Constitution as the time for holding regular elections for regular six-year terms. The Legislature has no power to change that time. It cannot authorize a regular election for a full term to be held in March, 1855, when the Constitution says such election "*shall* be held on the first Monday in August, 1851, and every six years thereafter." It is impossible.

The Constitution gives the Legislature power to pass laws to govern elections ; that is, to provide the machinery and prescribe the manner and mode of conducting the election, but not to change the time when that is fixed by the Constitution. It gives the Legislature power to provide by law for holding elections to fill vacancies; for this purpose the latter may not only provide the rules for conducting the elections as in the other case, but may fix the time for holding it, because the Constitution has not, nor could not, fix à time certain for holding a special election to fill a vacancy. Either the Governor or Legislature may fix the time for holding an election to fill a vacancy, but no power less than a constitutional Convention can change the time of holding the regular elections for judges fixed by the Constitution.

WAGNER, Judge, delivered the opinion of the court.

The circuit attorney of the 15th judicial circuit filed an information in the nature of a *quo warranto*, in the Iron county Circuit Court, against John W. Emerson, requiring him to show by what authority he performed the duties and exercised the functions of the judge of the said judicial circuit. The cause was taken by change of venue to the St. Louis Circuit Court, and upon a final trial in the last named court judgment was given against the relator and in favor of Emerson, and to reverse that judgment this appeal is prosecuted.

The relator claims the office by virtue of an election in August, 1857, and insists that the term for which he was legally elected had not expired when the respondent was elected in

1863. The Legislature by an act approved March 3, 1855, organized and created the 15th judicial circuit, and in section 3 of the act provision was made for electing a judge of the said circuit on the third Monday of March, 1855, who should hold his office until the regular election for circuit judges, which by the Constitution was fixed on the first Monday in August, 1857. At the election in March, 1855, the relator was elected judge of the said circuit, and at the regular election on the first Monday in August, 1857, he was re-elected to the same office for the full period of six years. At the election held in pursuance of law in November, 1863, John W. Emerson was elected judge of the same circuit for the term of six years.

By article 7 of the amendments to the Constitution, ratified by the Legislature at its session of 1850–1, the offices of the several circuit judges were declared to be vacated on the first Monday in August, 1851, and it was provided in the said amendment that the circuit judges should be elected for the term of six years; that the first general election for judges should be on the first Monday in August, 1851, and on the first Monday in August every six years thereafter.

The relator assumes the position, that so much of the act of March 3, 1855, as provides for the judge holding his office until the next general election is in conflict with the Constitution and void; that when he was elected in 1855, by virtue of the Constitution, it was for the full term of six years, or until 1861, and that when he was re-elected in 1857 it was for six more additional years; and that his second term commenced in 1861 and expired in 1867. And that Emerson, the respondent, although elected at a regular election in 1863, was not entitled to the office till 1867, or nearly four years after his election. If this position be correct, the Legislature surely committed a great absurdity when they created the 15th judicial circuit and provided for an election.

It is contended by the respondent that the Legislature possessed the unquestioned right to order an election to fill the office for less than the constitutional term, on the ground

State ex rel. Jackson v. Emerson.

that when the office was created there was a vacancy, and that it comes within the meaning of the clause in regard to filling vacancies by election for the remainder of the term. But this is a strained and unnatural construction, and not within the intention of a vacancy happening by " death, resignation, removal from the circuit," &c.

In construing an instrument, the true intention of the framers must be arrived at if possible, and, when necessary, the strict letter of the act, instrument or law must yield to the manifest intent. The Constitution provides that an election for circuit judges should be held in August, 1851, and every six years thereafter. The intention was to produce uniformity in the tenure of the judges throughout the State. The power to create and establish new circuits was conceded to the Legislature, but we are unable to see anything which expresssed or implied a prohibition against the Legislature forming a new circuit and making the judge elective till the next general election, though it should be a less period than six years. The amendment declaring that "hereafter each judge of the Circuit Courts shall be elected by the qualified electors of their respective circuits, and shall be elected for the term of six years," must be taken in connection with the latter part of the same section, which provides when the first general election shall be held, and enjoins an election every six years thereafter. The constitutional term of the judge was fixed at six years, and the Legislature had no power to either extend or abridge it; but we do not think that when a circuit was created or organized just previous to a general election, the Legislature was denied the power of filling the office of judge by special election, to hold till the ensuing general election. The clause in the Constitution seems to embrace all the circuit judges, and if such be the correct interpretation we will not suppose that it was ever intended that a person should be elected circuit judge when he could not qualify and exercise the functions of his office till a period of four years after his election.

Let the judgment be affirmed. Judge Fagg concurs; Judge Holmes did not sit, having been of counsel.