THE STATE ex inf. HADLEY, Attorney-General, v. BURKHEAD.

In Banc, February 28, 1905.

1. **Circuit Judges: Terms of Office.** It has been the uniform policy of the State since 1851, when circuit judges were first made elective, that the regular terms of circuit judges should begin on the same day and continue for six years.

2. ———: ———: **Interpretation of Constitution.** The Constitution should be construed with due regard to the law as it existed at the time of its adoption. At the time of the adoption of the Constitution of 1875 the organic and statutory law since 1851 had provided for a uniform time for electing circuit judges and for uniformity as to length of their terms.

3. ———: **Vacancy: New Office.** An office newly created becomes *ipso facto* vacant in its creation. So that when the Legislature creates a new judicial circuit that office is vacant within the meaning of the constitutional provision (sec. 32, art. 6) that, "In case the office of judge of any court of record become vacant by death, resignation, removal, failure to qualify, or otherwise, such vacancy shall be filled in the manner provided by law." And that being the case, it was competent for the General Assembly, in creating a new judicial circuit, to provide "by law" for the appointment of a judge to hold till the time of the next election, and then for the electon of his successor to hold until the January following the general election at which all circuit judges are by law required to be elected, and then for the election of his successor for a term of six years. This constitutional provision concerning vacancies is to be consid-

ered as an exception to the general provision (sec. 25, art. 6), that "judges of the circuit court shall hold their offices for the term of six years." This last section determines the regular or official term of the circuit judge, and makes no provision for its alteration by statute; the other provides for irregular or fractional terms, which necessarily will arise from death, resignation, or creation of new circuits, and authorizes the Legislature to so draft the laws concerning them that all regular terms may be uniform.

4. ———: Term of Office: New Circuit. Where the General Assembly creates a new circuit, it is competent for it to provide that the Governor may appoint a judge thereof to serve till the next general election, and that at such election his successor shall be elected to serve until the January following the general election at which all circuit judges are regularly required by law to be elected, and that at such general election a circuit judge shall be elected for such circuit to serve for six years from the January following. And where the statute so provides, and the Governor appoints a judge for the circuit created, and at the next general election his successor is elected to serve until the January following the general election at which all circuit judges are regularly required to be elected, such successor cannot, under the constitutional provision (sec. 25, art. 6) that "judges of the circuit court shall hold their offices for the term of six years," hold his office for six years, but he can hold it only to the January following the general election at which all circuit judges are by law required to be regularly elected.

5. ———: ———: ———: Case Stated. The General Assembly created a new judicial circuit in 1901, and the Governor appointed a judge for the circuit to serve until the general election in 1902, and at that election respondent was elected, and the law creating the circuit provided that the person elected in 1902 should hold the office until January, 1905, and that at the election in 1904 a judge should be elected to serve for six years from January, 1905, and at that election respondent's successor was elected, and respondent now claims that at the election in 1902 he was elected for a term of six years, and points to the constitutional provision (sec. 25, art. 6) which says that "judges of the circuit court shall hold their offices for the term of six years" as fixing his right to the office. *Held,* that under another provision of the Constitution (sec. 32, art. 6) which provides that "in case the office of judge of any court of record become vacant by death, resignation, removal, failure to qualify or otherwise, such vacancy shall be filled in the manner provided by law," and under another provision (sec. 11, art. 5) which provides that "when any office shall become vacant, the Governor, unless otherwise provided by law, shall appoint a person to fill such vacancy, who shall continue in office until

a successor shall have been duly elected, or appointed, and qualified according to law," the General Assembly, in order to establish a uniform time at which all circuit judges should be regularly elected, had the right to terminate respondent's term with January, 1905, and he must surrender it to his successor elected in 1904.

## Quo Warranto.

WRIT OF OUSTER AWARDED.

*Herbert S. Hadley*, Attorney-General, for informant.

(1)   A consideration of the constitutionality of the act of 1901, creating the Thirty-first Judicial Circuit, requires a consideration of sections 25, 30, 32, article 6, Constitution 1875, and, along therewith, section 14, article 6, and section 8, article 2, and section 9, article 14, and section 8, article 5, Constitution 1865. The general provision in reference to filling vacancies is found in section 11, article 5, Constitution 1875, which is practically a reproduction of the Constitution of 1865. The power to create new circuits is to be found in section 24, article 6, and in section 6 of the schedule. In compliance with the powers conferred by these various provisions are to be found various statutory enactments, such as section 1631, Revised Statutes 1899, and section 1673, Revised Statutes 1899. The Constitution of 1820 provided for the appointment of judges of the circuit court by the Governor, by and with the advice and consent of the Senate. This was changed by the constitutional amendment which became effective at the session of 1850-51, which amendment is article 7, section 1. The provision of the amendment of 1850-51 was largely reproduced in the Constitution of 1865, and both the amendments of 1850-51 and the Constitution of 1865 fixed the term of the judges of the circuit court at six years, and contained a provision that they should be elected "for the term of six years." The

Constitution of 1875 provides that they shall hold their offices "for the term of six years." There is also a manifest disposition of the framers of the Constitution of 1875 to confer broader powers upon the Legislature for filling vacancies than were conferred by the provisions of our two prior constitutions, in that the words "failure to qualify, or otherwise," have succeeded the words, "or other disqualifications." (2) The framers of the Constitution intended to provide by section 32, article 6, for the conferring upon the Legislature of the power for filling vacancies in the office of judge of any court or record from whatever cause such vacancy may arise. State ex rel. v. Emerson, 39 Mo. 80. (3) It is apparent that under the two provisions of the Constitution of 1875 it was the intention of its framers to leave the question of filling a vacancy which might arise from legislative enactment at the beginning of the term of a constitutional officer, or which might arise during the term of office by reason of death, resignation, etc., to the will and decision of the Legislature. It will be noted that under these two provisions of the Constitution referring to vacancies, the expression is: "Vacancy in office;" "in case the office of judge of any court become vacant;" "when any office shall become vacant." This is a complete answer to the contention as to the distinction between a vacancy in the term and a vacancy in the office. Both are placed on the same footing under the provisions of our Constitution. It must be the contention of respondent that these legislative enactments are unconstitutional and void, because if the Legislature can not provide for the election of a judge of the circuit court for a period of less than six years, then it can not provide for the filling of the residue of an unexpired term, by election, from the people of the circuit. (4) The Legislature had the right to create the Thirty-first Judicial Circuit; it had the right, in furtherance of the purpose of the in-

tention of the framers of the Constitution of 1875 to have uniformity in the election of circuit judges, to provide that the regular term of the judge of that circuit should begin on the first Monday in January, 1905, the time that the terms of judges of all other circuits in the State, with few exceptions, began. The vacancy which would then exist in the office of judge of the circuit court between March 13, 1901, and January 1, 1905, the Legislature could fill in the same way that is provided by law for filling the residue of an unexpired term. This power the Legislature has exercised and in its exercise should be upheld by the court.

*George W. Thornsberry, Edward J. White* and *Martin L. Clardy* also for informant.

(1) In a *quo warranto* proceeding the general order in legal proceedings, that the burden is upon the party complaining to show a case against the defendant, is reversed. In informations in the nature of *quo warranto,* as well as under the old common law writ, the State is not bound to show anything, but the defendant is bound to show that he has a right to the office in question, and if he fails to show his authority, a judgment of ouster goes against him. 3 Shars. Bl. Com., 263; State ex rel. v. Lund, 167 Mo. 228. (2) Respondent's position is that the section provided for an election, when none could legally be held. How could this affect respondent's successor? He was elected at a general election, and at a time provided for by both a special and a general statutory provision. Respondent does not contend that the act was void in creating the circuit—for if he did, he would have no standing, but only that it is void in providing for an election when none could legally be held. This is tantamount to contending that he was illegally elected. Grant that he was and that he had no right to hold the office, this would not affect his successor, if that portion of the

act providing for the election only was void, and the invalidity of that part would not affect the balance. Kirkwood v. Meramec Highlands, 94 Mo. App. 637; St. Louis Co. Ct. v. Griswold, 58 Mo. 175. This would profit him nothing, except to establish that his election, occurring as it did, at a time not provided for by general law, would be void. It would in no way affect the election of his successor, regularly elected at a general election, as provided by general law. R. S. 1899, sec. 1673; State ex rel. v. Thomas, 102 Mo. 92. (3) Section 24, article 6, Constitution, provides that "circuit courts may be changed, enlarged, diminished, or abolished from time to time, as public convenience may require." This section of the Constitution is clearly an enabling act, as the Constitution of 1865 (sec. 14), had no such general and broad grant of power. Opinion of Judges, 55 Mo. 215. And before this liberal construction of the provisions of the now obsolete clauses of the Constitution of 1865, above referred to, this court held that the General Assembly had the power to determine, by a general law, the length of terms of judges of the St. Louis circuit. State ex rel. v. McBride, 4 Mo. 303. But notwithstanding the broad grant of legislative power as set forth in said section 24, article 6, of Constitution of 1875, respondent contends that under section 25, article 6, his term of office should have been for six years, as that section provides that circuit judges "shall hold their offices for the term of six years." This section must be read in connection with the preceding section and the two must be harmonized, if possible. The latter section, so construed, refers to the terms of the thirty-one judges in the entire State, where no change has been made in their office, or no circuit "changed, enlarged, diminished, or abolished," by the Legislature, and, henceforth, it will refer to respondent's successors, as the act was so drawn as to make the election of a judge in this circuit the same as the general election for circuit judges throughout

the entire State, after respondent's short term expired. Laws 1901, p. 110; R. S. 1899, sec. 1673, as amended Laws 1901, p. 114. And this section, providing for the length of the term of office of a circuit judge, should also be read in connection with section 30, article 6, which provides that, "the election of judges of all courts of record, shall be held, as is, or may be provided by law." Reading these different sections of the Constitution together, in view of the apparent limitations upon the power of the General Assembly under the Constitution of 1865, as construed by this court (in 55 Mo. 215), there was a manifest object in these different new sections of the Constitution of 1875, and they were intended to and do grant a general power to the General Assembly, to change, alter, diminish or abolish a given circuit and to provide for the election of a judge in such changed, new, or different circuit—and without this power there would be, if all the circuits were changed, a different period of electing the different judges throughout the State—and the effect of the provisions of section 25 is simply to define the term of office of circuit judges, which the Legislature can not shorten and have not attempted to do, in the section under consideration, after the creation of the circuit. Aikman v. Edwards, 30 L. R. A. 149; People v. Wall, 88 Ill. 75; State ex rel. v. Hicks, 36 La. Ann. 836; State v. Gorin, 6 Nev. 276; In re Election of District Judges, 11 Colo. 373; People v. Le Fevre, 21 Colo. 218; Smith v. Halfacre, 7 Miss. 582; State v. McBride, 29 Wash. 335; State ex rel. v. Handy, 36 N. E. 1071; State v. Engeman, 24 Atl. 402; State ex rel. v. Emerson, 39 Mo. 89; Wellborn v. Estes, 70 Ga. 390; Stocking v. State, 7 Ind. 326; Allen v. Dunham, 1 G. Green 89; State v. Barbee, 45 Ohio St. 347. (4) The policy of the Legislature, while it does not concern this court, as evidenced by its acts creating circuits, ever since 1851, shows that its legislation has been such as to maintain uniformity in the terms of circuit judges.

(5)   Judge Burkhead's election having been "until" a fixed date, he can not hold over after that specified time.   State ex rel. v. Perkins, 139 Mo. 114; State ex rel. v. Seay, 64 Mo. 89; Dabbs' Case, 81 S. W. 1149; State ex rel. v. McCann, 81 Mo. 480; Ransoms' Case, 73 Mo. 78.   (6) Respondent is estopped to question the validity of a statute under which he held office for years and drew the emoluments thereof.   State v. Gorin, 6 Nev. 276; Bigelow, Estoppel (2 Ed.), p. 509; Callatin County Case, 1 Bush (Ky.), 548; Gaslight Co. v. St. Louis, 46 Mo. 121; Opinion of Judges, 49 Mo. 216.

*W. M. Williams* for respondent.

(1)   The Constitution of 1875 declares:   "The judges of the circuit court shall be elected by the qualified voters of each circuit; shall hold their offices for the term of six years, and shall reside in and be conservators of the peace within their respective circuits."   This applies to the first judge elected in a newly created circuit, as well as to those subsequently elected therein, and in other circuits of the State.   The term of a judge elected by the qualified voters of a circuit is definitely fixed by the organic law of the State. Constitution 1875, art. 6, sec. 26; People ex rel. v. Waterman, 86 Cal. 24; Johnson v. Duden, 18 Cal. 696; People v. Roseborough, 14 Cal. 180; People v. Burbank, 12 Cal. 378; Smith v. McConnell, 44 S. C. 491; State ex rel. v. Maloney (Tenn.), 20 S. W. 419; Ex parte Meredith, 33 Gratt. 119; People v. Green, 2 Wend. 266; People v. Coutant, 11 Wend. 132; Crowell v. Lambert, 9 Minn. 283; Sansbury v. Middleton, 11 Md. 296; In re Tenure of Office of Circuit Judges, 16 Fla. 841; In re Opinion of Justices, 61 Me. 601.   (2)   The Constitution of 1875, unlike those of 1820 and 1865, does not fix a date at which all of the circuit judges of the State are required to be elected, nor does it prescribe

a uniform time at which the terms of such judges shall
begin or end.   Uniformity in the time of electing or
in the beginning or ending of the terms of circuit judges
is not required.   The Constitution only declares that
the judges so elected shall hold their offices for six
years.   Everything else is left to the Legislature.
People ex rel. v. Waterman, 86 Cal. 24; People ex rel.
v. Townsend, 102 N. Y. 437.   The Legislature, since the
adoption of the present Constitution, has not adhered
to the rule of uniformity as to the time of electing
circuit judges.   In all the circuits having more than
one judge, the judges now are elected in different years.
(3) Uniformity in the time of electing circuit judges
not being required by the Constitution, the Legislature
had no more power to fix a two-year term for the first
judge elected in a newly-created circuit, in order that
his successors might be elected at the same time with
many other judges in the State, than to prescribe a
four-year term, or three-year term for his successor, to
meet some other legislative policy.   The people in their
Constitution have fixed the terms of circuit judges
elected by the qualified voters of the circuits at six
years; and where the term of an officer is prescribed
by the Constitution, the Legislature can neither extend
or abridge it.   Mechem on Public Officers, sec. 387;
State ex rel. v. Askew, 2 S. W. 349; People v. Bollam,
54 N. E. 1032; Howard v. State, 10 Ind. 99; People v.
Roseborough, 14 Cal. 180; State v. Thoman, 10 Kan.
191; People v. Willer, 11 Cal. 77.   (4) "Where the term
of an office is definitely fixed by the Constitution, a stat-
ute which attempts to enlarge or abridge the term so
fixed is not necessarily wholly void, but only in so far
as it attempts to change the constitutional term, and
officers elected or appointed under its provisions will
be entitled to serve for the period fixed by the Consti-
tution."   23 Am. and Eng. Ency. of Law (2 Ed.), 408;
Westbrook v. Roseborough, 14 Cal. 181; State v. Ma-
loney, 96 Tenn. 62; People v. Burch (Mich.), 47 N. W.

768. (5) Respondent derives title to his office by virtue of his election by the people, and his term under the Constitution and laws of the State can not be affected, limited or abridged by the language of his commission. State ex rel. v. Vail, 53 Mo. 108; State v. Chapin, 11 N. E. 319; People v. Lord, 9 Mich. 231. (6) That respondent was a candidate for nomination for the office in 1904 can not give validity to an election in that year not authorized by the Constitution, or oust him of his office before the expiration of his term under that instrument. The Constitution fixes the term of office and even though the incumbent "under a misapprehension of the law" should become a candidate at an unauthorized election, it would not change his constitutional rights. People v. Johnson, 18 Cal. 696; State ex rel. v. Seay, 64 Mo. 97; Stadler v. Detroit, 13 Mich. 364; Turnispeed v. Hudson, 50 Miss. 429.

GANTT, J.—This is an original proceeding in this court by the Attorney-General against Judge Asbury Burkhead, to require said Burkhead to show by what authority he assumes to exercise the duties of the office of judge of the circuit court within and for the Thirty-first Judicial Circuit of this State.

The return of the respondent pleads as his warrant for so doing, that the General Assembly of Missouri by an act approved March 13, 1901, created and established the Thirty-first Judicial Circuit of this State, composed of the counties of Christian, Douglas, Ozark, Stone and Taney, and provided therein for the election of a judge of said circuit at the general election to be held on the fourth day of November, 1902; that at said election the respondent Burkhead was duly elected to said office by the qualified voters of said circuit, and a certificate of his said election was issued to him; that he had all the qualifications prescribed by the laws of this State for the incumbent of said office, setting them out specifically and in detail; that on the eighth day of

December, 1902, the Governor of the State of Missouri, by virtue of respondent's election to said office by the qualified voters of said circuit and in accordance therewith, did, in the name and authority of the State of Missouri, issue to him a commission as judge of the said Thirty-first Judicial Circuit; that he duly qualified on the sixteenth day of December, 1902, by taking and subscribing an oath to support the Constitution of the United States and the Constitution of the State of Missouri, and to faithfully demean himself in said office, and a certificate thereof was indorsed on said commission; and respondent claims that, notwithstanding the Legislature by the act creating said circuit attempted to limit the *term* of the judge elected at the general election in November, 1902, to *two* years, yet the Constitution fixes said term at *six* years, and respondent by virtue of his election, qualification and commission is entitled, under the express terms of the Constitution, to hold said office for six years from the first day of January, 1903.

To this return the Attorney-General filed the following denial:

"Now comes Herbert S. Hadley, who in this behalf represents the State of Missouri, and for reply to the answer of respondent herein admits that at the general election in November, 1902, the respondent, Asbury Burkhead, was elected to the office of judge of the Thirty-first Judicial Circuit of the State of Missouri by the qualified voters of said circuit, and that he received a certificate of election therefor and a commission from the Governor of Missouri.

"But, your informant denies that respondent was elected to said office for a term of six years or that he is now rightfully holding said office and that he is now rightfully exercising the rights, privileges and duties devolving upon the judge of the Thirty-first Judicial Circuit of the State of Missouri, but alleges that each and every allegation in the respondent's an-

swer to this purport and effect is untrue; that in truth and in fact the respondent was elected to said office of judge of the Thirty-first Judicial Circuit under the provisions of an act of the General Assembly of the State of Missouri, approved March 13, 1901, creating said Thirty-first Judicial Circuit of the State of Missouri, and by the provisions of said act it was provided that the term of office for which the respondent was elected and commissioned should begin at the general election held in 1902, and that said term of office should end on the first Monday in January, 1905, and that the said term of office, by the express provisions of said act, did terminate upon the first Monday in January, 1905.

"Your informant further admits that upon the date alleged in the answer of respondent, the Hon. George W. Thornsberry was regularly appointed by the Governor of this State as judge of the Thirty-first Judicial Circuit of the State of Missouri to hold said office until the general election in November, 1902, but your informant further alleges that said Hon. George W. Thornsberry was appointed under the provisions of the same act of the General Assembly of the State of Missouri, approved March 13, 1901, under and by virtue of the provisions of which act said Asbury Burkhead was elected at the general election in November, 1902, to serve for a term which, it was provided in said act, should end on the first Monday in January, 1905.

"Your informant further alleges that at the general election in the year 1904, under the provisions of said act of the General Assembly, approved on the thirteenth of March, 1901, creating said Thirty-first Judicial Circuit, and particularly under the provisions of sections 1717 and 1749, the Hon. John T. Moore was duly elected, and was duly commissioned and qualified as judge of the Thirty-first Judicial Circuit of Missouri, as the successor of the respondent, to said office; and that since the first Monday in January, 1905, the

said Hon. John T. Moore has been and now is the duly elected, commissioned and legally qualified judge of the Thirty-first Judicial Circuit of the State of Missouri and is now legally and rightfully entitled to exercise the rights and duties of said office; that at the time of the election of said Hon. John T. Moore to said office, he was and is now fully and legally qualified for said position and that he was over the age of thirty years, had been a citizen of the United States for over five years, was a qualified voter of this State for three years next before his election, that he had been regularly admitted to the practice of the law and was learned in the law, and that he resided in and still resides in said Thirty-first Judicial Circuit.

"Further replying to the answer of the respondent herein, your informant states that by the terms of said act creating said Thirty-first Judicial Circuit of the State of Missouri, the official term of the respondent was limited as above set forth; that respondent was elected to said office solely by virtue of the provisions of said act of the General Assembly providing for said election; that proceeding under the provisions of said act, he assumed the duties of said office of judge of the Thirty-first Judicial Circuit and acting thereunder for a period of two years, he exercised the duties of said office and enjoyed the rights, privileges and emoluments thereof, knowing full well at all times that his term of office, by the provisions of said act of the General Assembly of Missouri, was so limited in time; that acting upon the knowledge of the said limitation imposed upon the terms of his said office by the express provisions of the act creating said Thirty-first Judicial Circuit and in recognition of the validity of said limitation, the said respondent became a candidate for nomination for the office of judge of the Thirty-first Judicial Circuit of Missouri before the Republican Judicial Convention of said circuit, which was held at Forsyth, Missouri, on April 11, 1904, which said con-

vention was legally called, under the provisions of the statutes of the State of Missouri, for the purpose of nominating a candidate for the office of judge of the Thirty-first Judicial Circuit of the State of Missouri, to be elected at the general election held in 1904, for a period of six years, beginning upon the first Monday in January, 1905; that in said convention, before which said respondent was a candidate and from which he was soliciting said nomination, he was defeated for nomination for said office by the said John T. Moore, who was duly nominated for said office by said judicial convention, and who was, at the general election in 1904, duly elected to said office as aforesaid, and who has regularly qualified to discharge the duties of said office as aforesaid, and who is now legally and rightfully entitled to exercise and discharge the duties of said office.

"That by reason of the above facts the respondent is now estopped from questioning the validity of the said act of the General Assembly of the State of Missouri under which said Thirty-first Judicial Circuit was created and his term of office so held by him was brought into existence, regulated and limited, and that he should be held so estopped by this court.

"Wherefore, your informant prays that the respondent be adjudged a usurper to the office of Judge of the Thirty-first Judicial Circuit of the State of Missouri, and judgment of ouster rendered against him; that said office may be restored to the rightful incumbent thereof, the Hon. John T. Moore, the successor of said respondent in said office; and that the costs of this proceeding shall be adjudged against the respondent, to all of which your informant will ever pray."

And thereupon the respondent filed his motion for judgment on the pleadings. The issues thus framed present the question for adjudication, whether so much of the act of 1901 creating the Thirty-first Judicial Circuit of this State as limited the term of respondent

to two years and to end on the first Monday of January, 1905, was unconstitutional. If constitutional, the term of respondent was at an end on the first Monday of January, 1905, and the ouster must be awarded.

By the act of March 31, 1901, the State was redistricted into judicial circuits, and by section 1716a the Thirty-first Circuit was created and composed of the counties of Christian, Douglas, Ozark, Stone and Taney. By section 1717 it is provided: "As soon as convenient after the approval of this act, the Governor shall appoint a judge of the Thirty-first Judicial Circuit, who shall hold his office until the next general election, when his successor shall be elected, which successor shall hold such office until the first Monday in January in the year 1905, and at the general election in the year 1904 a judge shall be elected for the Thirty-first Judicial Circuit in like manner as other circuit judges are elected."

By section 1749 of said act it is further provided: "At the general election in the year one thousand nine hundred and four, and at the general election every sixth year thereafter, all the circuit judges shall be elected, and shall enter upon the duties of their offices on the first Monday in January next ensuing: Provided, that the general election in the year 1904, and at the general election every sixth year thereafter, the judges of the circuit court of Jackson county, whose terms of office expire in said year 1902, shall be elected and shall enter upon the discharge of the duties of their offices as above provided: Provided, further, that nothing contained in this section shall be construed as changing the law now in force concerning the election of circuit judges in the city of St. Louis and the county of Buchanan."

The act of March 13, 1901, went into effect June 10, 1901, and thereupon the Governor appointed Hon. George W. Thornsberry judge of said circuit until the next general election to be held on the fourth day of No-

vember, 1902. On the last-mentioned day, the respondent Burkhead was elected judge of said circuit and duly commissioned for a *term ending the first Monday in January,* 1905. At the general election in 1904, Hon. John T. Moore, possessing all the qualifications of a circuit judge, was elected judge of said circuit, and was duly commissioned for a term of *six* years ending the first Monday in January, 1911.

The Constitution of Missouri (sec. 25, art. 6) provides: "The judges of the circuit court shall be elected by the qualified voters of each circuit; shall hold their offices for the term of six years, and shall reside in and be conservators of the peace within their respective circuits."

Section 32 of article 6 of the Constitution provides that "in case the office of judge of any court of record become vacant by death, resignation, removal, failure to qualify, or *otherwise,* such vacancy shall be filled in the manner provided by law."

Section 11 of article 5 of the Constitution provides: "When any office shall become vacant, the Governor, *unless otherwise provided by law,* shall appoint a person to fill such vacancy, who shall continue in office until a successor shall have been duly elected, or appointed and qualified according to law."

By an act of the General Assembly known as section 1631, Revised Statutes 1899, it is provided: "If the office of the judge of any court of record of this State shall become vacant from death, resignation or from any other cause, such vacancy shall be filled by the appointment of the Governor until the next general election held after such vacancy occurs, when the same shall be filled by election for the residue of the unexpired term."

In view of the foregoing constitutional and statutory provisions, the respondent Burkhead insists that the term of a circuit judge *elected* by the qualified voters of a judicial circuit is definitely fixed by the

Constitution of the State, and therefore, when he was elected at the general election in 1902, he was elected for *six* years, notwithstanding the statute providing for his election at that time expressly limited his term to end on the first Monday in January, 1905; that it was not in the power of the Legislature to make the term for which such election was held, to less than *six* years; that section 25 of article 6 of the Constitution applies to the *first* judge elected in such newly-created circuit as well as to those subsequently elected therein and in other circuits.

Section 25 of article 6 of the Constitution of 1875 has never been construed by this court, and in view of the Legislative construction placed upon it in connection with section 11 of article 5 and section 32 of article 6 of the Constitution as evinced by section 1631, Revised Statutes 1899, and executive action in various similar cases to this, the question presented by this proceeding is one of more than ordinary importance. We have deemed it instructive to trace the history of section 25 of article 6 of the Constitution of 1875. Under the Constitution of 1820 the judges of the circuit court were appointed by the Governor with the advice and consent of the Senate and held their offices during good behavior. [Sec. 13, art. 5, Constitution of Missouri, 1820.]

By a constitutional amendment adopted by the General Assembly of 1850 and 1851, the appointive system was abolished and thereafter, ''each judge of the circuit court shall be *elected* by the qualified voters of their respective circuits, and shall be elected for the term of six years, but may continue in office until his successor shall be elected and qualified, and if any vacancy shall happen in the office of any circuit judge, by death, resignation, removal out of his circuit, or by any other disqualification, the Governor shall, upon being satisfied that a vacancy exists, issue a writ of election to fill such vacancy: Provided, that said vacancy shall hap-

pen at least six months before the next general election of said judge; but if such vacancy shall happen within six months of the general election aforesaid, the Governor shall appoint a judge for such circuit; but every such election or appointment to fill a vacancy shall be for the residue of the term only. And the General Assembly shall provide, by law, for the election of said judges in their respective circuits; and, in case of a tie, or contested election, between the candidates, the same shall be determined in the manner to be prescribed by law. And the General Assembly shall provide, by law, for the election of said judges in their respective circuits, to fill any vacancy which may occur at any time at least six months before a general election for said judges. The first general election for circuit judges shall be on the first Monday in August, 1851, and on the first Monday in August every six years thereafter. . . . The offices of the several circuit judges shall be vacated on the first Monday in August, A. D. 1851.''

In the Constitution of 1865, the provisions of the amendment of 1851 were largely reproduced. It was provided a judge should be *elected* for each circuit and except as therein provided should be elected for a term of six years and until his successor should be elected and qualified. It was provided that ''if any vacancy shall happen in the office of any circuit judge by death, resignation, removal out of his circuit, or by any other disqualification,'' the Governor should issue a writ of election to fill such vacancy. The provisions as to filling vacancies were exactly as in the amendment of 1850-51. It was then provided that ''at the general election in 1868, and at the general election every sixth year, all the circuit judges should be elected and enter upon their duties the first Monday of January next ensuing.''

In both the amendment of 1850-51 and in the Constitution of 1865 it was provided that the circuit judge should be ''elected for the term of six years.'' The

Constitution of 1875 provides they shall "hold their offices for the term of six years."

It is apparent that there was a settled policy adopted in 1850-51 and continued in 1865 to produce a uniformity throughout the State in the election of circuit judges. It was only changed in 1865 to the extent of changing the general election from the first Monday in August to the first Tuesday in November, in 1868. Thus the Constitution remained until 1875, and the circuit judges were elected in 1868 and in 1874. By the express provision in the Schedule of the Constitution of 1875, "all persons now [then] filling any office or appointment in this State shall continue in the exercise of the duties thereof, according to their respective commissions or appointments, unless otherwise provided by law." As a matter of fact all the judges elected in 1874 did hold their offices until the general election in 1880, and elections were required to be held and were held in 1886, 1892 and 1898, and by the last general districting act of 1901 it was provided that at the general election in 1904 and at the general election every sixth year thereafter *all* the circuit judges shall be elected except in the city of St. Louis and the county of Buchanan. That it has been the uniform policy of the State that the regular terms of the circuit judges of the State should begin on the same day and should continue for six years is not to be denied.

We have recalled the provisions of the prior constitutions of this State and the unbroken line of legislative enactments indicating a settled policy of uniformity in the election of and the terms of office of circuit judges of this State, for the reason that it is a recognized rule of construction that the Constitution should be construed with due regard to the law as it existed at the time of its adoption. At that time the organic law and the statute law since 1851 had provided for a uniform time of electing circuit judges and for the length of their terms.

State ex inf. v. Burkhead.

The constitutional provision for the election of circuit judges and providing that they should be elected for the term of six years was before this court for construction in State ex rel. Jackson v. Emerson, 39 Mo. 80. By an act of the General Assembly approved March 3, 1855, the Fifteenth Judicial Circuit was established. By the third section of that act it was provided an election should be held in the various counties of said circuit on the third Monday in March, 1855, for a judge of said circuit "who should hold his office until the regular election for circuit judges."

The regular election was fixed by the Constitution for the first Monday in August, 1857. At the election in March, 1855, Jackson was elected judge of said circuit, and at the regular election in August, 1857, he was re-elected for a term of six years. At the next regular election in 1863, John W. Emerson was elected judge of said circuit for six years. Thereupon Jackson claimed that he was entitled to hold said office until 1867; that by his election in 1855 he was entitled to hold until 1861 and by his election in 1857 he was entitled to six years, beginning in March 1861, and ending in March, 1867; that so much of the act of 1855 as limited his first term until the next regular election in 1857 was unconstitutional. While this court recognized that the regular term of a circuit judge was six years under the Constitution, it held that in construing the constitutional provision in question, "the true intention of the framers must be arrived at if possible, and, when necessary, the strict letter of the act, instrument or law must yield to the manifest intent. The intention was to produce uniformity in the tenure of the judges throughout the State. The power to create and establish new circuits was conceded to the Legislature, but we are unable to see anything which expressed or implied a prohibition against the Legislature forming a new circuit and making the judge elective till the

next general election, though it should be for a less period than six years.''

In that case Judge Ewing, counsel for Jackson, urged, just as respondent Burkhead in this case does, that when a circuit judge was elected under that Constitution, it was for six years, and that the Legislature could not limit his first term to less than six years or to the next regular election. In that case it was insisted by Messrs. Glover and Shepley that the provisions of the Constitution for filling a vacancy would support the act of the Legislature, but it was pointed out by Judge WAGNER that the only vacancy authorizing an election for the residue of the term was a vacancy which should happen in the office of circuit judge by ''death, resignation, removal out of his circuit or by any other disqualification.''

Obviously Judge WAGNER and this court were right in holding that the vacancy for which the Constitution provided was not a vacancy which occurred simply by the creation of the office before any incumbent had occupied it. But the opinion stands upon the broader ground that as the Legislature had the unquestioned right to create and establish new circuits, it was no infringement of the Constitution to provide by an election for filling the term until the regular election for all circuit judges. When, therefore, the Convention of 1875 came to deal with the judicial department of our State government, they were aware of the construction placed upon the former Constitutions. They were apprised also that the vacancy provided for in the Constitutions of 1850-51 and 1865 was limited to the vacancy caused by ''death, resignation, removal out of his circuit or by disqualification'' of the incumbent. And it is obvious when the Convention came to consider the vacancies that would almost inevitably occur in the offices of the various judges of the courts of record, instead of limiting it by special legislation as had been done in the amendment of 1850-51 and 1865, they in-

serted a provision more in harmony with the scope of an organic law, and by section 32 of article 6 of the Constitution provided that "in case the office of judge of *any court of record* become vacant by death, resignation, removal, *failure to qualify or otherwise,* such vacancy shall be filled in the manner provided by law." Now prior to the meeting of the Convention in 1875 it had become the decided law of this State that whenever a new office is created and no one is designated by the act establishing it to fill it, there exists a vacancy in the office (State ex rel. v. County Court, 50 Mo. 317), and the opinion therein expressed has been followed and approved since. [State ex rel. v. McMillan, 108 Mo. 153.] And such is the accepted doctrine in other jurisdictions in the United States. [Walsh v. Commonwealth, 89 Pa. St. 426.] In State ex rel. v. Askew, 48 Ark. 89, the Supreme Court of that State said: "Vacancy is the state of being empty or unfilled. Vacant lands are unoccupied lands. A vacant house is an untenanted house. A vacant office is an office without an incumbent; and it can make no difference whether the office be a new or an old one. An old office is vacated by death, resignation, or removal. An office newly created becomes *ipso facto* vacant in its creation." [Rhodes v. Hampton, 101 N. C. 629; Stocking v. State, 7 Ind. 326.]

Now it is a familiar and wise rule for the interpretation of all instruments in writing, statutes and constitions as well, that no construction should be adopted which substantially discards any clause therein, but "the rule applicable here is, that effect is to be given, if possible, to the whole instrument, and to every section and clause. If different portions seem to conflict, the court must harmonize them, if practicable, and must lean in favor of a construction which will render every word operative, rather than one which may make some words idle and nugatory." [Cooley's Const. Lim. (6 Ed.), p. 72.]

It is clear at a glance that the framers of the Constitution were dealing with one and the same subject when they formulated sections 25 and 32 of article 6 of the Constitution of 1875. Both refer to the filling of the office of judge of the circuit court. Section 25 provided for the regular or official term of the circuit judge and fixed that at six years, a limitation which all concede can neither be abridged nor extended by the Legislature, and in section 32 they were providing for those irregular terms which the prescience of the framers saw would necessarily result from the death, resignation or removal of an incumbent and from the creation of new circuits from time to time as the growth of the State would necessitate, and by the word "vacancy" and "filling such vacancy" they intended to and did provide for those irregular or fractional terms. Each of these sections is a part of the organic law and each equally binding upon the Legislature and the courts. They also expressly provided for that which this court had already construed to be a necessary intendment and power, to-wit, that the "circuits may be changed, enlarged, diminished or abolished from time to time as public convenience may require."

Anticipating then the creation of new circuits wherein the judgeship would be vacant, they wisely determined to leave the filling of such vacancies to the wisdom of the Legislature, and accordingly ordained that "such vacancies shall be filled in the manner provided by law." Reading the two sections together, they provided in section 25 for the length of the regular term and made it six years, to conform to and continue the then established constitutional and statutory policy of the State, but at the same time, recognizing that the vacancies which would occur would necessarily produce irregular terms of the incumbent elected or appointed to fill the same, they conferred that power upon the Legislature.

In so doing they ratified the construction placed

by this court upon the constitutional amendment of
1850-51 by which it was held competent for the Leg-
islature to provide for the election of a judge for a
vacancy occurring by the establishment of a new cir-
cuit, notwithstanding the regular term was fixed at six
years, but aware of the difficulty which confronted the
court in construing the language as to vacancies, they
went further and gave the Legislature full power to
provide by law for all vacancies in the offices of judges
of courts of record, and this the Legislature did in the
enactment of section 1631, Revised Statutes 1899,
wherein it is provided: "If the office of the judge of
any court of record of this State shall become vacant
from death, resignation, or from any other cause, such
vacancy shall be filled by the appointment of the Gov-
ernor until the next general election held after such
vacancy occurs, when the same shall be filled by election
for the residue of the unexpired term."

In the same revision by section 1673 the uniform
election of all circuit judges with the exceptions of the
city of St. Louis and county of Buchanan was provided
for every sixth year, and that uniformity is preserved
in the act of March 13, 1901.

It seems to be conceded that it was entirely com-
petent for the Legislature to have provided for the
appointment of a judge by the Governor, for such
power is expressly conferred by section 11 of article
5 of the Constitution which provides: "When *any*
office shall become vacant, the Governor, unless other-
wise provided by law, shall appoint a person to fill such
vacancy, who shall continue in office until a successor
shall have been duly elected or appointed and qualified
according to law." Had the Legislature not been em-
powered by section 32 to provide for vacancies in the
offices of judges of courts of record, if the Legislature
created a new circuit and did not provide for an elec-
tion, unquestionably the Governor could have filled the
vacancy.

The question then is narrowed down to the authority of the Legislature to provide for filling a portion of the vacancy resulting from the creation of a new circuit by an election to fill such portion. In our opinion the grant contained in section 32 is ample to allow the Legislature to provide for it, either by appointment by the Governor for the whole vacancy, or by an election for the whole vacancy, or, as it has been done, by appointment by the Governor until the first general election after the vacancy occurs and an election for the residue of such vacancy; and reading the Constitution in the light of the previous and then existing and constitutional provisions and all of its own provisions together, we are satisfied that by the term "vacancy" the framers meant that period of time from the happening of the vacany up to the time when the other circuit judges were to be elected throughout the State, and that the purpose of uniformity was apparent—otherwise the term vacancy is indefinite and too uncertain for the practical enforcement of the Constitution.

We are reinforced in the views above expressed by the decisions of our sister States.

Thus, in State ex rel. v. Gorin, 6 Nevada 276, the Constitution of Nevada provided that, "the district judges shall be elected by the qualified electors of their respective districts and shall hold office for the term of four years (excepting those elected at the first election) from and including the first Monday of January next succeeding their election and qualification." By an act of the Legislature of 1867 it was provided "that the county of Lincoln (which was created by the same act), should constitute the Ninth Judicial District, and a judge thereof shall be appointed by the Governor who shall hold his office until his successor is elected and qualified; *provided,* his successor shall hold his office two years from the first day of January, 1869." Under this law, Charles A. Leake was elected to this judgeship in November, 1868, and entered upon the duties

of his office.  In 1870, in August, he died, and the Governor appointed Gorin to succeed him.  At the regular election in November, 1870, Fuller was elected to succeed Gorin for the full term of four years.  Gorin refused to surrender the office and *quo warranto* was brought against him by the Attorney-General.  Gorin placed his right to retain the office upon the assumption that the election of Leake was for the full term of four years instead of two; that the law so far as it limited it to two years was in conflict with section 5 of article 6 of the Constitution.  In denying such a contention, the court held the act constitutional, and said, among other things:  "Section five, which declares that district judges elected, etc., 'shall hold office for the term of four years,' simply means that four years shall be the regular full term of the district judgeship of this State.  By the literal language of the Constitution, it is made incumbent upon every person elected to the judgeship to continue in the office for the period of four years.  It will certainly not be claimed that any such construction is to be placed upon the clause in question, and the only other which can be placed upon it, is that it fixes the term of the office, and not of the officer.  Nor does the election of a person to the office of judge necessarily fix the beginning of a four years' term; for that may be, by the section quoted concerning the filling of vacancies, an election for a fractional part of a term.  And it is from the reason which gave rise to this latter section, that we find a solution of this case.  What, then, was the object sought to be accomplished by the provision limiting the election of a judge, when a vacancy has occurred, to the residue of the unexpired term?  A vacancy having happened, why not at the first opportunity allow the people to fill the office for the full term of four years?  Manifestly, we think, because it was deemed desirable to have the election of these judges occur at the same time throughout the

State, to prevent the expiration of one term at one time and another at another time.''

A similar construction was given a similar constitutional provision by the Supreme Court of Kansas in Hagerty v. Arnold, 13 Kan. 367, the court holding that the term of office fixed by the Constitution applied only to the regular term of the office and not to *vacancies* or exceptional cases.

In State ex rel. v. Hicks, 36 La. Ann. 836, the same contention was made that is made by respondent, that a judge elected to fill a newly-created judgeship, although limited by the act to ''the next general election for district judges, or until his successor shall be qualified according to law,'' was elected for four years as provided by the Constitution of Louisiana, article 109, but the Supreme Court rejected the argument and held that the provision in regard to filling vacancies at special elections authorized a shorter term, to-wit, until the next regular election for such judges.

To the same effect is Wellborn v. Estes, 70 Ga. 390, in which the Supreme Court called to its aid the same rules of construction which we have invoked in this case, and it was held that the filling of a vacancy by limiting the term of the first incumbent did not collide with the constitutional provision fixing the term of their offices at *four* years.

In State ex rel. v. Askew, 48 Ark. 82, the position of respondent is completely answered. The Constitution of Arkansas, section 17 of article 7, fixed the terms of circuit judges at four years, but also contained a further provision, section 50 of article 7, that, ''All vacancies occurring in any office provided for in this article [the article relating to the judicial department] shall be filled by special election.'' The court held that, when a new office was created, a vacancy existed at once as to its incumbency, citing Stocking v. State, 7 Ind. 326, and State ex rel. v. Boone County Court, 50 Mo. 317, and other authorities, and said that the theory

that there was no vacancy prior to an election in such case was supported by one case only, State ex rel. v. Messmore, 14 Wis. 163. Held, further, that when the Constitution was adopted it had been settled under the provisions of a former constitution that upon the happening of a vacancy the election was for the unexpired portion of the term and not for a full term of four years. The court in a clear and lucid opinion construed the act providing for an election of a judge, the term of whose office should expire at the time of the other circuit judges, to be constitutional.

In answer to the proposition urged in this case, that the term was fixed for six years in order to secure the independence of the judiciary, the Supreme Court of Arkansas pertinently remarks that, "it must not be supposed that the convention fixed the tenure of judges out of any particular regard for the sanctity of the judicial office, above that of any other constitutional office. With us, offices exist for the public convenience, and not for the special benefit of the incumbents. The purpose was to secure not merely a fixed term of office to the judges, but also to afford the people an opportunity at stated intervals to change them." And we may remark, that certainly the tenure adopted in this State was not to secure the independence of the judiciary only, inasmuch as a *life tenure* by appointment was abolished in 1850-51, and instead thereof the elective system for six years adopted.

Learned counsel for respondent urged that the various decisions which were founded largely on the evident purpose of producing uniformity in the election of the judges were based on constitutional provisions which, like the amendment of 1850-51 and 1865, fixed a definite beginning and ending of the term, but in Hagerty v. Arnold, 13 Kan. 380, the court bases its argument and conclusion that when the Constitution (as our Constitution of 1875 does) fixes the length of the term without designating the day of the beginning

of the term, the Legislature has the right to fix the commencement, and the principle of uniformity is a paramount consideration in the interpretation of statutes like the one now before us for construction. [In re Election of Judges, 11 Colo. 373; People ex rel. v. Le Fevre, 21 Colo. 218.]

In support of the opposing view we are cited to numerous cases in other States. Among these is People ex rel. v. Waterman, 86 Cal. 27. That was a proceeding to compel the Governor by mandamus to call an election.

Under the law of this State this court would have no power to compel the Governor to issue his writ of election, but aside from that, the facts are readily distinguishable from any of the cases we have cited. By section 9 of article 6 of the Constitution of California the Legislature was authorized to increase or diminish the number of judges of the superior court of any county. By an act of March 5, 1887, it did increase the judges of the superior court of San Bernardino county from one to two, and empowered the Governor to appoint an additional judge to hold office until the first Monday in January, 1889, and provided further that at the "next general election a judge of such superior court *should be elected to hold office for the term prescribed by the Constitution* and the law."

The next general election was held in November, 1888, at which Waterman was elected in accordance with such act. In September, 1890, the mandamus was sued out. The term of the other judge expired under the law the first Monday in January, 1891. The question was, did Waterman's term under "the Constitution and law" expire at the time the other judge's term expired, or was he elected for *six* years from and after the first Monday in January 1889? It was held, *second,* that Waterman was not elected to fill a vacancy under the laws of that State, a ruling contrary to our decisions and the great weight of authority in this

country.  But, *third*, when the mandamus was applied
for, Waterman had served less than two years of the
time for which he had been elected, whereas in this
case respondent Burkhead had fully served the term
for which he had been elected according to the statute
which authorized his election.

Perhaps the best-reasoned case opposed to the
view we have taken is that of Meredith ex parte, 33
Gratt. 119.  Under the Constitution of Virginia at that
time and now, the judges of the Court of Appeals and
other courts of record are required to be elected by the
Legislature and in the Constitution there was no such
comprehensive provision as to the filling of vacancies
as is found in the Constitution of Missouri, but the
term of the judge was fixed by the Constitution.  Judge
STAPLES in the course of his opinion recognized fully
the reason given by the Supreme Court of Mississippi
and other courts in States where the judges are elected
by the people, as they are with us, and nowhere is it
better stated than by himself.

He draws the distinction in Virginia between the
officers whose tenure was fixed by the Constitution, but
were elected by the people, and the judges who were
chosen by the Legislature.  He says: ''These refer-
ences are sufficient to show that in filling the offices
elected by the people the primary object is uniformity,
to avoid as far as possible the necessity of special elec-
tions, and to establish a system of general elections
throughout the State.  And although it is not expressly
so provided, it follows by necessary implication that
whenever a vacancy occurs the election is for the unex-
pired term only.  For if the incumbent is permitted to
hold for the full constitutional term, in the course of
time the deaths, resignations and removals occurring in
the different counties would have the effect practically
to abrogate the system of regular elections.  When,
therefore, the Constitution provides that certain officers
shall be elected at a regular election, and that this

election shall take place on a certain day named, at regular stated periods, it follows by inevitable implication that the terms of all such offices are to be controlled by the regular election held throughout the State.''

Without reviewing all the cases relied upon by relator it must suffice to say that the peculiar language of the different constitutions has induced the construction for which respondent contends.   To us the reason of Chief Justice Sharkey, in 6 Howard (7 Miss. 582), 582, in Smith v. Halfacre, announces the true rule when a Constitution like ours provides for the election of judges by the people and also provides for a system of general elections.   The Constitution of Mississippi, 1832, section 11, article 4, provided that the circuit judges shall be elected by the qualified electors of each judicial district and hold their offices for the term of four years and reside in their respective districts.   The facts of that case were practically identical with those before us in this case.   There was, however, no such comprehensive provision for filling vacancies as is found in section 32 of our Constitution, and yet Judge Sharkey pointed out that the provision for a four years' term must be read in connection with the whole Constitution and the provision for general elections for the election of all officers.   The proposition by counsel in that case was the same as that so ably argued by counsel for respondent in this case, that the Constitution had not fixed the time when the tenure of the judgeship should begin.   To this the court addressed itself and pointed out that the contention of counsel would lead to inextricable confusion; that it was at war with the design and scope of the Constitution and the system of electing all officers at a general election.   He says:  ''Counsel rely entirely on the force of the provision contained in the 11th section of the 4th article, which declares that the circuit judges shall be elected by the qualified electors of each judicial district, and hold their offices for the term of four

State ex inf. v. Burkhead.

years. This section, considered alone, might justify their construction; but the whole instrument is to be taken together, with reference to all its parts. Other parts of the instrument provide that a general election shall be held biennially, in November, for the purpose of electing all officers under the Constitution. The term of four years, then, is to be taken in connection with this other provision.''

The space alloted to this opinion will not admit of a reproduction of the full argument of the great jurist, but to our minds, based as it is upon a Constitution containing the same or kindred provisions of our own, it is a most satisfactory solution of the question before us. It is in harmony with the decision of this court in State ex rel. v. Emerson, 39 Mo. 80, and with the legislative and executive construction placed upon the Constitution of 1875 in the establishment of various new circuits; a construction acquiesced in by the bar of the State, and one which respondent himself placed upon the Constitution when he offered himself as a candidate for the nomination for this office in 1904.

The conclusion we have reached is that section 25 of article 6 of the Constitution provides for the full regular term of a circuit judge elected at the general election for circuit judges; that section 32 was inserted to provide for the filling of vacancies and irregular terms until the regular general elections for judges, and that it was and is the true meaning and scope of the Constitution on this subject to provide a system of general elections for judges every six years, and that these vacancies end with such general elections; that the act of 1901 was a constitutional act, and that respondent Burkhead's term ended the first Monday in January, 1905, and that since that date he has been a usurper and the writ of ouster is therefore awarded to remove him from said office.

All concur.